# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 11-2704

David J. Jones, Appellant,

v.

Eric K. Shinseki,
Secretary of Veterans Affairs, Appellee.

On Appeal from the Board of Veterans' Appeals

(Decided October 26, 2012)

*Glenn R. Bergmann* and *Thomas M. Polseno*, both of Bethesda, Maryland, were on the briefs for the appellant.

*Will A. Gunn*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; *Gayle E. Strommen*, Deputy Assistant General Counsel; and *Rudrendu Sinhamahapatra*, all of Washington, D.C., were on the brief for the appellee.

Before LANCE, DAVIS, and PIETSCH, *Judges*.

LANCE, *Judge*: The appellant, veteran David J. Jones, appeals through counsel the portion of a July 12, 2011, decision of the Board of Veterans' Appeals (Board) that denied entitlement to an initial disability rating in excess of 10% for irritable bowel syndrome (IBS).[1]  For the following reasons, the Court will vacate the Board's decision on that matter and remand it for readjudication consistent with this decision.

## I. FACTS

The appellant served on active duty in the U.S. Marine Corps from February 14, 1972, to January 21, 1975, including service in the Philippines.  R. at 1499.

---

[1] The Board also remanded the matters of entitlement to service connection for a low back disability, a left knee disability, and a left ankle disability, as well as for entitlement to an initial disability rating in excess of 30% for sinusitis with headaches, and those matters are not before the Court at this time.  *See* 38 U.S.C. § 7266 (stating that the Court reviews only final decisions of the Board); *see also Howard v. Gober*, 220 F.3d 1341, 1344 (Fed. Cir. 2000) (Board remand does not constitute a final decision that may be appealed (citing 38 C.F.R. § 20.1100(b) (1999))).

In January 2003, the appellant filed an application seeking entitlement to benefits for several conditions, including a back injury, a knee injury, and sinus problems. R. at 1475-88. He did not list gastrointestinal problems among his claimed disabilities. A January 22, 2004, VA medical record noted a history of nausea and diarrhea while in service, diagnosed as spastic colon ongoing since service and controlled with diet and bulking agents. Record (R.) at 1051. In a June 8, 2004, decision, the Chicago, Illinois, VA regional office (RO) granted entitlement to service connection for gastrointestinal problems and assigned an initial noncompensable rating, effective January 28, 2003. R. at 1037-42.

The appellant filed a Notice of Disagreement in November 2004, asserting that he experienced "frequent episodes of bowel disturbance with abdominal distress." R. at 1032. In December 2004, he submitted a letter from Michael Egan, a VA nurse practitioner, who stated that the appellant suffered from spastic colon and IBS with "at times debilitating" spasms at least once per month, and that his condition "is not completely controlled with diet and fiber." R. at 1028. A February 2, 2004, VA treatment record notes that the appellant did not suffer from "f/n/v/d" (fever, nausea, vomiting, diarrhea)[2] or abdominal pain but recorded "chronic episodes of loose BMs" (bowel movements). R. at 983. August and November 2004 VA treatment records note a history of spastic colon, no diarrhea or abdominal pain, but note chronic episodes of loose bowel movements and IBS with at least monthly fluctuations. R. at 878-80, 924-26. Treatment records from February, May, June, and October 2005 and April 2006 contain nearly identical notations. R. at 710-13, 851-54, 858-61, 870-73.

In an August 31, 2005, Statement of the Case, the RO determined that the appellant was entitled to a 10% rating for his IBS and granted that rating effective January 28, 2003. R. at 802-24. VA hospital records from July 2006 note that the appellant reported "nervous stomach" with "loose stools most of the time," and the examiner noted that bowel sounds were present. R. at 666-73. In December 2006, the appellant reported "loose stool at times," and again the examiner noted that bowel sounds were present. R. at 595-602.

---

[2] *See* Stanley Jablonsky, *Dictionary of Medical Acronyms and Abbreviations* 374 (5th ed. 2005) (indicating that "n/v/d" stands for "nausea, vomiting, diarrhea").

In August 2007, the appellant testified at a hearing before the Board. His representative reported that he "has constant abdominal pain and he has constant diarrhea. In his particular case, with [IBS] he doesn't experience constipation, he has near constant, you know, diarrhea." R. at 765. The appellant reported 5 to 7 bowel movements per day. R. at 765. He testified that he took "VA-prescribed stomach antacids." R. at 766. When asked what the medication was supposed to do, the appellant responded,

A. Well it stops the acid or the diarrhea and I constantly should have some on me, the diarrhea pills, those I get over the counter.

Q. To minimize the number of problems you would have every day?

A. Oh, yes, well the diarrhea, but the constant discharge, and it's not that I eat bad or eat things, its just fiber, there was a fiber diet I was put on. I[t] does help quite a bit. I eat cereal all the time. But that helps. It makes a stiffer bowel movement.

R. at 766. He reported that there were times when he soiled himself because he was unable to get to a bathroom, and that he was unaware of other treatment options. R. at 767. The appellant also testified that he was taking electrolytes that had been recommended by VA to treat dehydration. R. at 767-68.

In January 2008, the Board issued a decision remanding the appellant's IBS claim for additional development. R. at 283-90. In particular, the Board ordered the RO to schedule the appellant for a VA examination, as his records "indicate that [his] symptoms are not completely controlled by diet and fiber" and that he "testified he has constant abdominal pain and diarrhea." R. at 286.

In March 2008, the appellant submitted a statement in support of his claim. R. at 268-69. He reported that his IBS was a "worsening condition" and that he had been prescribed new medication to control acid reflux associated with his IBS. R. at 268. The appellant stated that gas and daily stomach aches were common but that he "live[d] with them." R. at 268. He also indicated that he took simethicone tablets,[3] over-the-counter antacids, and diarrhea medication and that he produced only a "watery muddy stool." 268. The appellant stated that further documentation of his condition was available from his doctors. R. at 268.

---

[3] Simethicone is used to treat flatulence. *See* DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1718 (32d ed. 2012).

On April 17, 2009, the appellant underwent a VA gastrointestinal (GI) examination. R. at 410-12. The appellant reported bowels that were "not watery, but rather just loose" with a frequency of 5 to 8 bowel movements per day. R. at 410-11. The examiner, Dr. Ashish Arora, stated that the appellant "[had] been evaluated for this abdominal pain and diarrhea symptoms in the past" and noted that the appellant suffered from sharp abdominal pain that "is intermittent [and] improves after having a bowel movement." R. at 411. Dr. Arora indicated that anti-acid medication provided "some improvement" but that Metamucil and Pepto-Bismol provided only "minimal relief." R. at 411. Dr. Arora diagnosed the appellant with abdominal discomfort with loose stools and recommended an upper endoscopy to "evaluate for upper GI causes of diarrhea." R. at 411. Records from April 19 and 27 indicate that the appellant had been scheduled for an upper endoscopy due to diarrhea symptoms. R. at 405-08.

In December 2009, the appellant underwent a VA stomach and intestinal examination, where he reported "loose stools that occasionally are prolonged periods of diarrhea." R. at 356-57. The examining physician, Dr. Donald DePinto, reviewed the results of the April 2009 upper endoscopy and opined that the appellant's symptoms had not changed since that time. R. at 357.

On July 12, 2011, the Board issued the decision on appeal. The Board discussed the appellant's medical evidence and his lay testimony. R. at 9-11. The Board determined, however, that

> the medical evidence does not indicate the level of impairment that would warrant at least the next highest schedular 30% rating for IBS at any time since the grant of service connection, i.e., severe ICS [(irritable colon syndrome)] with diarrhea, or alternating diarrhea and constipation, with more or less constant abdominal distress. In this regard, the Board notes that medical records from 2004 to 2009 consistently show problems with loose bowel movements, but were negative for diarrhea and constipation, and that anti-acid medication provided some relief of symptoms.

R. at 11. The Board further determined that the appellant was not entitled to an extraschedular rating for his IBS. R. at 11-12. This appeal ensued.

## II. THE PARTIES' ARGUMENTS

The appellant argues that the Board committed legal error by considering factors outside the schedular rating criteria for IBS—namely, the fact that medication afforded the appellant some level

of relief from his symptoms. Appellant's Brief (Br.) at 16-17. He asserts that "[h]ad VA intended that the efficacy of medication be taken into account in rating IBS, it could easily have done so" in the rating criteria. Appellant's Br. at 16. In support of this argument, the appellant cites to other diagnostic codes (DCs) that explicitly include the need for or effects of medication as part of the rating criteria for various disabilities. Appellant's Br. at 16-17. In the alternative, the appellant argues that "if it was appropriate for the Board to weigh the efficacy . . . of [his] medications in evaluating the severity of his disability, then the Board should also have considered and discussed symptomatology other than that explicitly listed" in the rating criteria. Appellant's Br. at 17.

In response, the Secretary argues that the Court is precluded by statute from reviewing VA's Schedule for Rating Disabilities. Secretary's Br. at 14 (citing 38 U.S.C. § 7252(b)); *Butts v. Brown*, 5 Vet.App. 532, 539 (1993)). He also asserts that the rating criteria for IBS contemplate "whether the frequency or severity of . . . IBS symptoms were lessened or controlled with medication," as the criteria "do[] not differentiate between[] a claimant's condition with or without medication." Secretary's Br. at 13-14. Finally, he contends that, as the Board was required to view the appellant's condition "in terms of its overall history and context," it did not err when it considered the effects of medication. Secretary's Br. at 14-15 (citing 38 C.F.R. §§ 4.1, 4.2).

The appellant also contends that the Board clearly erred when it determined that he did not suffer from diarrhea or, in the alternative, that it failed to provide an adequate statement of reasons or bases for that determination, as it did not explain why "loose bowel movements" did not constitute diarrhea for the purposes of the rating criteria for IBS. Appellant's Br. at 10-16. In support of this argument, the appellant cites to several medical dictionaries, which define diarrhea as "'abnormal frequency and liquidity of fecal discharges,'" Appellant's Br. at 10 (citing DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 517 (31st ed. 2007)), and "'[a]n abnormally frequent discharge of semi-solid or fluid fecal matter from the bowel,'" Appellant's Br. at 10 (citing STEDMAN'S MEDICAL DICTIONARY 494 (27th ed. 2000)). He asserts that the medical examinations on which the Board relied are ambiguous at best and that the Board improperly discounted his lay testimony as to his symptoms. Appellant's Br. at 12-15.

The Secretary responds that the Board did not clearly err, as the December 2009 VA opinion on which it relied stated that the appellant "'has had loose stools that *occasionally* are prolonged

5

periods of diarrhea.'" Secretary's Br. at 9 (quoting R. at 356). Similarly, he notes that, although VA treatment records note abdominal distress and loose bowel movements, they are negative for diarrhea and constipation. Secretary's Br. at 8. Finally, the Secretary argues that the definitions of diarrhea proffered by the appellant require liquidity of bowel movements, as opposed to mere looseness. Secretary's Br. at 10.

### III. EFFECTS OF MEDICATION

#### A. Jurisdiction

Initially, the Court rejects the Secretary's terse contention that it lacks jurisdiction to reach the appellant's arguments. Although the Secretary is correct that the Court lacks the authority to "review the schedule of ratings for disabilities adopted under [38 U.S.C. § 1155] or any action of the Secretary in adopting or revising that schedule," 38 U.S.C. § 7252(b), that is not what the appellant asks the Court to do in the present case. Rather, the appellant challenges the Board's application of DC 7319, arguing that it applied factors wholly outside that DC when rating his disability. *See* Appellant's Br. at 16-17. It is well settled that the Court has jurisdiction to review VA's interpretation and application of its own regulations. *See*, *e.g.*, *Lane v. Principi*, 339 F.3d 1331, 1339 (Fed. Cir. 2003) (holding that the "Court should review *de novo* the Board's interpretation of a regulation"); *Bradley v. Principi*, 22 Vet.App. 280, 290 (2008). This power includes the ability to review the Board's interpretation and application of a DC. *See*, *e.g.*, *Otero-Castro v. Principi*, 16 Vet.App. 375, 380-82 (2002) (reviewing the Board's interpretation and application of 38 C.F.R. § 4.104, DCs 7005, 7007 (2001)).

#### B. Discussion

Turning to the merits of the appellant's argument, "[w]e review the [Board's] interpretation of regulations de novo." *Tropf v. Nicholson*, 20 Vet.App. 317, 320 (2006) (citing *Hatch v. Principi*, 18 Vet.App. 527, 531 (2004)). "On review, if the meaning of the regulation is clear from its language, then that is 'the end of the matter.'" *Id*. (quoting *Brown v. Gardner*, 513 U.S. 115, 120 (1994)). "The Secretary's interpretations of his rules and regulations will only be given deference as long as they are not inconsistent with the regulation or otherwise plainly erroneous." *Ervin v.*

*Shinseki*, 24 Vet.App. 318, 326 (2011); *see also Thun v. Shinseki*, 572 F.3d 1366, 1369 (Fed. Cir. 2009).

The Court holds that the Board committed legal error by considering the effects of medication on the appellant's IBS when those effects were not explicitly contemplated by the rating criteria. The appellant's IBS is currently rated by analogy under the rating criteria for irritable colon syndrome (ICS). Under those criteria, a noncompensable rating is warranted for a "mild" disability with "disturbances of bowel function with occasional episodes of abdominal distress." 38 C.F.R. § 4.114, DC 7319 (2012). A 10% disability rating is warranted for a "moderate" disability with "frequent episodes of bowel disturbance with abdominal distress." *Id*. The maximum 30% rating is warranted for a "severe" disability with "diarrhea, or alternating diarrhea and constipation, with more or less constant abdominal distress." *Id*.

As this Court has made clear, "[t]he Board's consideration of factors which are wholly outside the rating criteria provided by the regulations is error as a matter of law." *Massey v. Brown*, 7 Vet.App. 204, 208 (1994); *see also Drosky v. Brown*, 10 Vet.App. 251, 255 (1997) (finding legal error where the Board, "in essence, impermissibly rewrote" the regulation by considering factors wholly outside the rating criteria); *Pernorio v. Derwinski*, 2 Vet.App. 625, 628 (1992) ("In using a standard that exceeded that found in the regulation, the Board committed legal error.").[4]

"[A] functioning system of laws must give primacy to the plain language of authorities." *Tropf*, 20 Vet.App. at 322 n.1; *see also Myore v. Nicholson*, 489 F.3d 1207, 1211 (Fed. Cir. 2007) ("'Statutory interpretation begins with the language of the statute, the plain meaning of which we derive from its text and its structure'" (quoting *McEntee v. Merit Sys. Prot. Bd.*, 404 F.3d 1320, 1328 (Fed. Cir. 2005))); *Otero-Castro*, 16 Vet. App. at 380 ("The basic principles that apply to construing statutes apply equally to construing regulations." (citing *Smith v. Brown*, 35 F.3d 1516, 1523 (Fed. Cir. 1994))). Requiring the Secretary to explicitly list the factors to be considered when rating a disability ensures consistent application of the disability ratings. "Without standard word meanings

---

[4] The Court notes that these cases do not preclude the use of factors outside the rating criteria when evaluating an extraschedular rating. *See*, *e.g.*, *Thun v. Peake*, 22 Vet.App. 111, 115 (2008) (requiring evidence that "presents such an exceptional or unusual disability picture that the available schedular evaluations for that service-connected disability are inadequate"), *aff'd sub nom. Thun v. Shinseki*, 572 F.3d 1366 (Fed. Cir. 2009); *Fisher v. Principi*, 4 Vet.App. 57, 60 (1993) ("[T]he rating schedule will apply unless there are 'exceptional or unusual' factors which render application of the schedule impractical.").

7

and rules of construction, neither Congress nor the Secretary can know how to write authorities in a way that conveys their intent and no practitioner or—more importantly—veteran can rely on a statute or regulation to mean what it appears to say." *Tropf*, 20 Vet.App. at 322 n.1. Thus, "if the Secretary wishes to establish a DC containing [specific] criteria for a . . . rating, it is his obligation to do so clearly, not ambiguously." *Otero-Castro*, 16 Vet.App. at 382. Indeed, in *Otero-Castro*, the Court held that "the Board's consideration of factors outside the rating criteria ([including] relief with rest and medication) could not be a basis for denial of a 60% rating." *Id.*

The Secretary has demonstrated in other DCs that he is aware of how to include the effect of medication as a factor to be considered when rating a particular disability. *See*, *e.g.*, 38 C.F.R. § 4.71a, DC 5025 (2012) (10% rating for fybromalgia requires symptoms "[t]hat require continuous medication for control"); 38 C.F.R. § 4.97, DC 6602 (2012) (rating criteria for bronchial asthma). "It is well settled that '[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purportedly in the disparate inclusion or exclusion.'" *Heino v. Shinseki*, 683 F.3d 1372, 1379 (Fed. Cir. 2012) (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)); *see also Buczynski v. Shinseki,* 24 Vet.App. 221, 227 (Secretary's omission from a DC of a limitation included in other DCs was an important factor in determining the plain meaning of the DC); *Tropf*, 20 Vet.App. at 321 n.1 ("Numerous authorities state that when a statute or regulation omits a term in one place that is used in other places, that omission should be regarded as intentional and given effect."). His failure to include the effects of medication as a criterion to be considered under DC 7319 while including such effects as criteria under other DCs must therefore be read as a deliberate choice.

Nor is the Court persuaded by the Secretary's argument that 38 C.F.R. §§ 4.1 and 4.2 change this analysis. *See* Secretary's Br. at 14-15. Although those regulations stipulate that VA must view each disability "in relation to its history" to "accurately reflect the elements of disability present," 38 C.F.R. §§ 4.1, 4.2, nothing in either regulation discusses whether VA should consider the effects of medication when assigning a disability rating. As the Court discussed above, absent a clear intent to include such effects in the rating criteria, consideration of factors not expressly listed results in the possibility of inconsistent application of the rating criteria by the Board and uncertainty on the

part of veterans and practitioners. *See Tropf*, 20 Vet.App. at 322 n.1; *Otero-Castro*, 16 Vet.App. at 382.

In *Massey*, for example, the Court held that the Board erred when it found that a higher rating was not warranted based on factors and symptoms that, while representative of Mr. Massey's mental disability and arguably related to his earning capacity, were not specifically included in the DC. 7 Vet.App. at 207–08. The Court similarly rejected this approach in *Drosky*. In that case, the Board denied entitlement to a 30% rating for rheumatic heart disease because Mr. Drosky's enlarged heart—one of the requirements for a 30% rating— was "expected" and not "significant, abnormal, or disabling." *Drosky*, 10 Vet.App. at 255. The Court vacated the Board's decision, holding that the Board erred by considering factors outside the rating criteria—namely, whether the appellant's enlarged heart was unexpected or significant.

In this case, the Board has committed a similar error by considering the ameliorative effects of the appellant's medication. As in *Massey* and *Drosky*, this relief—though relevant to the appellant's overall disability picture—is not explicitly mentioned in either the rating criteria under DC 7319 or the general compensation regulations. Absent a clear statement setting out whether or how the Board should address the effects of medication, the Board erred in taking those effects into account when evaluating the appellant's disability, rather than limiting itself to the symptoms expressly contemplated by DC 7319. Put another way, DC 7319 requires the Board to inquire whether the appellant suffers from diarrhea or alternating diarrhea and constipation, with more or less constant abdominal distress. 38 C.F.R. § 4.114, DC 7319. It does not, however, direct the Board to consider relief from those symptoms afforded by medication, nor may the current versions of §§ 4.1 and 4.2 be read that way in light of the Court's prior case law.

Thus, to the extent that the Court did not explicitly hold in *Otero-Castro* that the Board may not deny entitlement to a higher rating on the basis of relief provided by medication when those effects are not specifically contemplated by the rating criteria, it does so today. This ensures that all similarly structured DCs are interpreted and operate in the same manner so that diagnostic criteria are applied consistently. Therefore, as DC 7319 is silent as to the effects of medication, the Board erred in denying entitlement to a higher disability rating based on the relief provided by the appellant's anti-acid medication.

9

To be clear, although the Court holds that the Board improperly applied DC 7319 when it considered the effect of medication on the appellant's IBS, the Court cannot—and will not—address whether the Secretary *should* include the effects of medication as a factor in the rating criteria. *See* 38 U.S.C. § 7252(b); *Tropf*, 20 Vet.App. at 322 n.1 ("[T]he Court recognizes that it is the prerogative of the Secretary to implement title 38 of the U.S. Code through regulation."). The Secretary is free to amend the rating criteria for IBS or to adopt a general regulation addressing whether the effects of medication should be taken into account when determining the appropriate disability rating. However, as the current version of DC 7319 does not contemplate the effects of medication in controlling ICS (or, by analogy, IBS) while other DCs *do* explicitly consider the effects of medication, the Court will vacate the Board's decision with respect to the issue of a higher initial disability rating for IBS and will remand that matter for readjudication consistent with this decision.

On remand, the Board must reevaluate the appellant's condition and may not consider the relief afforded by his medication when doing so. The Board must discuss whether a medical opinion is required to address this issue and, if so, provide an adequate examination to the appellant. The appellant is free to submit additional evidence and argument, including the arguments raised in his briefs to this Court, in accordance with *Kutscherousky v. West*, 12 Vet.App. 369, 372-73 (1999) (per curiam order), and the Board must consider any such evidence or argument submitted. *See Kay v. Principi*, 16 Vet.App. 529, 534 (2002). The Board shall proceed expeditiously, in accordance with 38 U.S.C. §§ 5109B, 7112 (requiring Secretary to provide for "expeditious treatment" of claims remanded by Board or Court).

## IV. REASONS OR BASES

Given this disposition, the Court need not address the appellant's alternative argument that the Board should have considered favorable evidence outside the rating criteria. *See Quirin v. Shinseki*, 22 Vet.App. 390, 395 (2009) ("It is well settled that the Court will not ordinarily consider additional allegations of error that have been rendered moot by the Court's opinion."). The Court will, however, address the appellant's reasons or bases argument to provide guidance to the Board on remand. *See id*. at 396. Initially, the Court notes that both parties cite medical dictionary

definitions of diarrhea to support their arguments regarding the Board's finding that the appellant's gastrointestinal symptoms, including loose bowel movements, do not constitute diarrhea. *See* Appellant's Br. at 10; Secretary's Br. at 10. Although the Court "may take judicial notice of facts not subject to reasonable dispute," *Smith v. Derwinski*, 1 Vet.App. 235, 238 (1991) (citing FED. R. EVID. 201(b)), the parties' use of the same medical dictionary definitions as support for opposing arguments is evidence of a reasonable factual dispute. Indeed, under the circumstances here, such medical dictionary evidence is best considered as a form of treatise evidence to be weighed by the Board rather than indisputable fact given that accepted medical knowledge changes over time.[5] The Court will therefore not take judicial notice of those definitions. *See id.*

After a review of the record, the Court holds that the Board failed to provide an adequate statement of reasons or bases for its decision. *See* 38 U.S.C. 7104(d)(1); *Gilbert v. Derwinski*, 1 Vet.App. 49, 57 (1990). In particular, the Board failed to discuss whether there is a difference between "loose bowel movements" and diarrhea. The Board also failed to address whether the appellant was competent to report that he suffered from frequent diarrhea and abdominal distress and, if so, the weight that should be assigned to that lay testimony. *See Jandreau v. Nicholson*, 492 F.3d 1372, 1377 (Fed. Cir. 2007) (noting general competence of laypersons to testify as to symptoms but not medical diagnoses). Finally, the Board failed to discuss medical evidence specifically stating that the appellant suffered from diarrhea symptoms, including a VA nursing note with an indication of diarrhea (R. at 405) and a VA gastroenterology consultation noting that the appellant had "diarrhea symptoms" (R. at 407). *See Kahana v. Shinseki*, 24 Vet.App. 428, 433 (2011) ("[T]he Board must . . . provide the reasons for its rejection of any material evidence favorable to the claimant.").

On remand, in addition to the matters discussed in part III, *infra*, the Board must address whether a medical opinion is required to address the distinction, if any, between reports of "loose bowel movements" and diarrhea and, if so, must obtain such an opinion. The Board must also determine whether the appellant is competent to report that he suffered from diarrhea and abdominal distress and, if so, must weigh that evidence against the other evidence of record. Finally, the Board

---

[5] This is not to say that a dictionary cannot be used to interpret jargon in a medical opinion.

must discuss the medical evidence identified in the appellant's brief that characterizes his symptoms as diarrhea. *See* Appellant's Br. at 6 (citing R. at 405, 407).

## V.  CONCLUSION

Accordingly, the portion of the July 12, 2011, Board decision that denied entitlement to an initial disability rating in excess of 10% for IBS is VACATED, and that matter is REMANDED for readjudication consistent with this decision.