KASOLD, Judge,
with whom SCHOELEN, Judge, joins, concurring in part:
I agree with the result reached in today’s decision. The Board’s analysis and application of diagnostic code (DC) 7101 was proper, and the Board decision on appeal should be affirmed. I write separately, however, because Mr. McCarroll’s argument that Jones v. Shinseki requires remand on the facts in his case illustrates that the Jones holding—i.e., that “the Board may not deny entitlement to a higher rating on the basis of relief provided by medication when those effects are not specifically contemplated by the rating criteria,” Jones v. Shinseki, 26 Vet.App. 56, 63 (2012)—is erroneous and should now be *277 overturned. See Bethea v. Derwinski, 2 Vet.App. 252, 254 (1992) (“Only the en banc Court may overturn a panel decision.”).
Jones is fairly cited by Mr. McCarroll for the proposition that it is impermissible to deny a compensable rating when the veteran raises the possibility that his symptoms would rise to a compensable level if he were not taking his required medication. See Appellant’s Brief (Br.) at 10 (“[I]f the only reason Mr. McCarroll’s blood pressure readings were noncompensable was because of the therapeutic effects of his medication[ ], it would be impermissible to deny him a compensable rating based on those therapeutic effects.”); see Jones, supra. Although Jones has been artfully distinguished by the majority opinion being issued today, the better course is to recognize that the Jones holding is predicated on a misunderstanding of the rating schedule and a failure to appreciate the ramifications of that holding and is therefore wrongly decided. It should be overturned.

The Rating Schedule

The essence of the rating schedule is that veterans are compensated for their symptoms and, specifically, how those symptoms would, on average, impair a person’s earning capacity. 38 U.S.C. § 1155 (“The Secretary shall adopt and apply a schedule of ratings of reductions in earning capacity from specific injuries or combination of injuries. The ratings shall be based, as far as practicable, upon the average impairments of earning capacity resulting from such injuries in civil occupations.”); 38 C.F.R. § 4.2 (2016) (noting that it is crucial for the rating to “accurately reflect the elements of disability present”); 38 C.F.R. § 4.10 (2016) (“The basis of disability evaluations is the ability of ... [an] organ of the body to function under the ordinary conditions of daily life including employment.”); 38 C.F.R. § 3.321(b)(1) (2016) (“Ratings shall be based as far as practicable[ ] upon the average impairments of earning capacity[J”).
To accomplish the task of compensating a veteran based on the average impairment in earning capacity, the diagnostic codes in the disability rating schedule ask what the veteran’s symptoms are, compared to a list of symptoms of ascending severity in the rating schedule, which this Court is without authority to second-guess. See 38 U.S.C. § 7252(b) (“The Court may not review the schedule of ratings for disabilities adopted under section 1155 of this title or any action of the Secretary in adopting or revising that schedule.”); Wanner v. Principi, 370 F.3d 1124, 1130-31 (Fed. Cir. 2004) (“The Secretary’s discretion over the [rating] schedule, including procedures followed and content selected, is insulated from judicial review with one recognized exception limited to constitutional challenges.”). The rating schedule does not ask what the symptoms could be, if not for various positive influences in a veteran’s life, including medication.
Mr. McCarroll’s arguments amply illustrate the distortion of the rating schedule created by Jones. He argues that his blood pressure readings were “skewed” by the ameliorative effects of his medication. Appellant’s Br. at 11. But, the readings were not skewed. The introduction of medication did not “taint” the results or render them inaccurate or misleading. The readings reflect the actual level of Mr. McCarroll’s blood pressure at the times the readings were taken, and they therefore reflect “the elements of disability present” at those times. 38 C.F.R. § 4.2. Because taking blood pressure medication is not an unusual phenomenon for people with high blood pressure, the readings also reflect the condition of Mr. McCarroll’s body under “the *278 ordinary conditions of life.” 38 C.F.R. § 4.10. Otherwise stated, nothing in the rating schedule warrants subtracting whatever positive influences medication has on Mr. McCarroll’s blood pressure.
Flaw in Jones
A review of Jones reflects that its holding was predicated on an inaccurate premise. Specifically, the Court stated in Jones that the Secretary “demonstrated in other DCs that he is aware of how to include the effect of medication as a factor to be considered when rating a particular disability.” 26 Vet.App. at 62. The Court then pointed to two other DCs (5026 and 6602) that the Court stated require VA adjudicators to expressly consider the ameliorative effects of medication. Id. However, neither of the two “other DCs” cited by the panel in Jones requires the Board to consider the “ameliorative effects” of medication. In DC 5025, a 10% disability rating is provided for fibromyalgia where symptoms “require continuous medication for control.” 38 C.F.R. § 4.71a, DC 5025 (2016). In DC 6602, a 10% disability rating is provided for bronchial asthma if the record shows, inter alia, “intermittent inhalational or oral bronchodilator therapy.” 38 C.F.R. § 4.97, DC 6602 (2016). These diagnostic codes require only that the Board consider the fact of medication usage, as a proxy for the seriousness of the condition; they do not require that the Board consider any “ameliorative effect.”
Indeed, although some diagnostic codes mention the fact of medication usage as a rating criterion, none require the Board to make any affirmative use of information about the “ameliorative effects” of the medication. See, e.g., 38 C.F.R. § 4.79, DC 6012 (2016) (DC for angle-closure glaucoma establishes a 10% rating “if continuous medication is required”); 38 C.F.R. § 4.88b, DC 6351 (2016) (DC for HIV-related illness allows a 30% rating with certain symptoms if the veteran is “on approved medication(s)”); 38 C.F.R. § 4.118, DC 7806 (2016) (DC for dermatitis or eczema provides ratings based, in part, on the type of medication used, including a 60% rating when there is “constant or near-constant systemic therapy such as corticosteroids or other immunosuppres-sive drugs required during the past 12-month period”).[7]
In sum, nothing about the rating schedule supports the Jones conclusion that the Board must affirmatively rule out any *279 ameliorative effects of medication when assessing a veteran’s disability picture.

Unacceptable Ramifications

That the Jones holding should be overturned becomes even clearer when one considers the unacceptable consequences that flow inexorably from it. Cf. United States v. Dixon, 509 U.S. 688, 709-10, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993) (noting that an earlier decision of the Court should be overturned because it was “wrong in principle,” had “proved unstable in application,” and was “a continuing source of confusion”). The requirement that the Secretary “may not consider the relief afforded by [a veteran’s] medication when” applying the rating schedule, as Jones demands, See Jones, 26 Vet.App. at 63, invites medical speculation in trying to guess what a veteran’s symptoms might be without the medication, or medical malpractice in the cessation of medication so that the veteran’s symptoms without medication might be recorded. The former invites non-helpful guesswork by medical practitioners, see Hood v. Shinseki, 23 Vet.App. 295, 298-99 (2009) (medical opinions that are speculative have “little probative value”), and the latter raises, at a minimum, serious ethical concerns that no court should encourage. That Jones essentially requires the Board to consider whether a medical examination is required to determine how serious a veteran’s symptoms would have been in an alternate reality in which he or she was not taking his or her required medication should alone demonstrate the fallacy of the Jones holding.

Closing

I concur that there was no clear error in the Board’s analysis for the reasons stated in today’s controlling opinion, but, for the reasons stated above, the Court, now sitting en banc, should declare the Jones holding wrongly decided and overrule it. See Bethea, supra.

. Similar to the DC in Jones, DC 7101 does not require the Board to take into account any ameliorative effects of medications; the Board is to consider only the fact that the veteran may have particular blood pressure readings while taking "continuous medication for control.” 38 C.F.R. § 4.104, DC 7101 (2016). Therefore, although I agree with today’s ultimate decision, I disagree with the statement that DC 7101 asks the Board to consider the "effects” of medication. Ante at 271. The Board acted properly in denying a compensable rating because the DC does not contemplate the effects of medication and the Board did not take any such effects into account. Mr. McCarroll’s diastolic pressure readings are not predominantly 100 or more, his systolic pressure readings are not predominantly 160 or more, and he has never had a history of diastolic pressure predominantly 100 or more. Therefore, under the plain language of the regulation, whether he "requires continuous medication for control” or not, he does not meet the requirements for a 10% rating. See § 4.104, DC 7101; see also Tropf v. Nicholson, 20 Vet.App. 317, 320 (2006) ("On review, if the meaning of the regulation is clear from its language, then that is ‘the end of the matter.’ ” (quoting Brown v. Gardner, 513 U.S. 115, 120, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994))). This was precisely the finding reached by the Board in this case. See Record at 4 (Board finding that ”[t]he Veteran’s hypertension has not manifested with diastolic pressure predominantly 100 or more, with or without medication; or, systolic pressure predominantly 160 or more throughout the initial rating period”).