﻿Citation Nr: AXXXXXXXX
Decision Date: 12/31/20 Archive Date: 12/31/20

DOCKET NO. 190916-31047
DATE: December 31, 2020

ORDER

Entitlement to an initial rating of 30 percent, but no higher, for eosinophilic esophagitis, from September 10, 2010, is granted.

Entitlement to a separate rating of 10 percent, but not higher, for constant oral infections of the mouth, as a residual of tonsillar cancer, from September 10, 2010 to August 29, 2018, is granted.

Entitlement to a separate rating of 30 percent, but not higher, for constant oral infections of the mouth, as a residual of tonsillar cancer, from August 30, 2018, is granted.

Entitlement to an initial compensable rating for radiodermatitis is denied.

FINDINGS OF FACT

1. The Veteran’s eosinophilic esophagitis was manifested by difficulty swallowing solids, liquids, and pill and accompanied by pain when swallowing, at least for the period from September 10, 2010.

2. The Veteran’s oral infections are manifested by intermittent drug therapy for a duration of less than 6 weeks in a 12-month period, at least for the period from September 10, 2010.

3. The Veteran’s oral infections of the mouth are manifested by drug therapy for a duration of greater than 6 weeks but less than constant or near-constant for a 12-month period, at least for the period from August 30, 2018.

4. The Veteran’s radiodermatitis is manifested by hypersensitivity to touch without evidence supporting at least six square inches of hyperpigmentation.

CONCLUSIONS OF LAW

1. The criteria for an initial rating of 30 percent, but not higher, for eosinophilic esophagitis, from September 10, 2010, have been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.1-4.7, 4.21, 4.31, 4.114, Diagnostic Code 7203.

2. The criteria for a separate rating of 10 percent from September 10, 2010 to August 29, 2018, and a rating of 30 percent from August 30, 2018, for constant oral infections of the mouth, as a residual of tonsillar cancer, have been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.1-4.7, 4.14, 4.114, Diagnostic Code 7820.

3. The criteria for a compensable rating for radiodermatitis have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.1, 4.2, 4.7, 4.10, 4.118, Diagnostic Code 7806.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty in the U.S. Army from October 1966 to October 1968.

This appeal to the Board of Veterans’ Appeals (Board) originates from a January 2012 rating decision by the Agency of Original Jurisdiction (AOJ), Department of Veterans Affairs (VA), which denied service connection for tonsillar carcinoma. The Veteran perfected an appeal to the Board. In an April 2018 decision, the Board granted service connection for tonsillar cancer, and subsequently remanded the case to the AOJ for determination of the associated residuals.

In June 2018, the Veteran returned a Rapid Appeals Modernization Program (RAMP) Opt-In form, selecting the supplemental claim lane. The AOJ issued RAMP rating decisions in January and April of 2019. The April 2019 rating decision corrected clear and unmistakable errors in the January 2019 rating decision. In September 2019, the Veteran submitted a timely VA Form 10182 Decision Review Request: Board Appeal (Notice of Disagreement) identifying the January 2019 and April 2019 rating decisions and selected the evidence review lane under the Appeals Modernization Act (AMA), as the appeal process. 

Upon review of the September 2019 VA Form 10182, the Veteran, by and through his attorney, recites “correct evaluation of residuals tonsillar cancer” as the issues appealed. However, the additional pages included with the VA Form 10182 identified in list form the specific issues of an initial increased rating for eosinophilic esophagitis, an initial increased rating for radiodermatitis, and a separate rating for oral infections of the mouth previously rated as part of the eosinophilic esophagitis, as those appealed. The evidentiary appeal period window under election to the AMA evidence submission lane for each of these issues begins September 10, 2010, with the Veteran’s initial informal claim, and extends to the April 25, 2019, RAMP final rating decision. See 38 C.F.R. §§ 3.2400, 19.2; 20.202. The selection of the evidence submission lane provides an opportunity to submit additional evidence within 90-days following receipt of the VA Form 10182. See 38 C.F.R. § 20.303. Therefore, the Board may consider the evidence of record at the time of the April 25, 2019 rating decision, as well as any evidence submitted by the Veteran or his representative with, or within 90 days from receipt of, the VA Form 10182. 

As such, the Board has jurisdiction of the specifically identified issues of an initial compensable rating for eosinophilic esophagitis, an initial compensable rating for radiodermatitis, and a separate rating for oral infections previously rated a part of eosinophilic esophagitis under the evidence lane of the AMA frameworks.

Increased - Initial Rating

Disability evaluations are determined by applying the criteria set forth in VA’s Schedule for Rating Disabilities (Rating Schedule), found in 38 C.F.R. Part 4. The Rating Schedule is primarily a guide in the evaluation of disabilities resulting from all types of diseases as injuries encountered as a result of, or incident to, military service. The ratings are intended to compensate, as far as can practically be determined, the average impairment in earning capacity resulting from diseases and injuries incurred or aggravated during military service and the residual conditions in civil occupations. See 38 U.S.C. § 1155; 38 C.F.R. §§ 4.1. 

Disability evaluations are based upon the ability of the body as a whole, or of the psyche, or of a system or organ of the body to function under the ordinary conditions of daily life, including employment. 38 C.F.R. § 4.10.

Separate diagnostic codes identify the various disabilities. See 38 C.F.R. § 4.27. VA has a duty to acknowledge and to consider all regulations that are potentially applicable to issues raised in the record and to explain the reasons and bases for its conclusions. See Schafrath v. Derwinski, 1 Vet. App. 589, 593 (1991). It is not expected that all cases will show all the findings specified; however, findings sufficiently characteristic to identify the disease and the disability therefrom and coordination of rating with impairment of function will be expected in all instances. See 38 C.F.R. § 4.21.

Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating; otherwise, the lower rating will be assigned. See 38 C.F.R. § 4.7. 

Where entitlement to compensation has already been established and an increase in the disability rating is at issue, the present level of disability is the primary concern. See Francisco v. Brown, 7 Vet. App. 55, 58 (1994). In determining the severity of a disability, the Board is required to consider the potential application of various other provisions of the regulations governing VA benefits, regardless of whether they were raised by the Veteran, as well as the entire history of the Veteran’s disability. See 38 C.F.R. § 4.1, 4.2; Schafrath,1 Vet. App. at 595.

Separate evaluations may be assigned for separate periods of time, or staged, where factual findings show distinct time periods during which the Veteran’s disability exhibits symptoms that warrant the application of different ratings. See Fenderson v. West, 12 Vet. App. 119, 126-28 (1999).

Additionally, the evaluation of the same disability under several diagnostic codes, known as pyramiding, must be avoided. See 38 C.F.R. § 4.14. Separate ratings may be assigned for distinct disabilities resulting from the same injury only where the symptomatology for one condition is not duplicative or overlapping with the symptomatology of the other condition. See Esteban v. Brown, 6 Vet. App. 259, 261-62 (1994). 

When there is an approximate balance of positive and negative evidence regarding the merits of an issue material to the determination of the matter, the benefit of the doubt in resolving each such issue shall be given to the claimant. 38 U.S.C. § 5107 (b); 38 C.F.R. §§ 3.102, 4.3.

1. Entitlement to an initial compensable rating for eosinophilic esophagitis (formerly characterized as impairment of the mouth, destroyed salivary glands, severe dry mouth, and constant infections of the mouth), include consideration of a separate rating for constant oral infections of the mouth.

The Veteran contends that his eosinophilic esophagitis (formerly characterized as impairment of the mouth, destroyed salivary glands, severe dry mount, and constant infections of the mouth) warrants a compensable rating and should be evaluated as analogous to Diagnostic Code 7203 for esophageal stricture, and Diagnostic Code 7305 for duodenum ulcers, not Diagnostic Code 7346 for hiatal hernia. Also, the Veteran contends that he is entitled to a separate compensable rating for constant oral infections of the mouth, under Diagnostic Code 7820, as a manifestation that is separate and distinct from the eosinophilic esophagitis. 

The Board finds that eosinophilic esophagitis and oral infections of the mouth should be rated as separate and distinct disabilities. The signs and symptoms for eosinophilic esophagitis and the oral infections of the mouth, including oral thrush and lesions, are separate. While both conditions trace back to the Veteran’s radiation treatment of his tonsillar carcinoma, these two conditions do not pyramid. Eosinophilic esophagitis is a disorder of the throat presented by a reduced diameter. On the other hand, the Veteran’s oral infections of the mouth, including oral thrush and lesions, are not associated with a reduced diameter of the throat. Further, the treatments for the two conditions are vastly different, the eosinophilic esophagitis was treated with the corticosteroids Prednisone and Budesonide and physical dilation of the Veteran’s throat, while the oral infections are treated by Nystatin, a non-absorbed antifungal solution. Further, the degree of the oral infections was not affected by changes in the Veteran’s treatment of his eosinophilic esophagitis and vice versa.

Turning first to eosinophilic esophagitis, Diagnostic Code (DC) 7305, which evaluate ulcers of the duodenum (a part of the intestine), is not analogous to eosinophilic esophagitis characterized by difficulty swallowing solids and/or liquids. Under DC 7305, a 60 percent rating is warranted for severe duodenal ulcers that are manifested by pain only partially relieved by standard ulcer therapy, periodic vomiting, recurrent hematemesis or melena, with anemia and weight loss and productive of definite impairment of health. A 40 percent rating is warranted for moderately severe duodenal ulcers that are less than severe but are productive of impairment of health with anemia and weight loss; or, recurrent incapacitating episodes averaging 10 days or more in duration at least four or more times a year. A 20 percent rating is warranted for moderate duodenal ulcers that are manifested by recurring episodes of severe symptoms two or three times a year averaging 10 days in duration; or, with continuous moderate manifestations. A 10 percent rating is warranted for mild duodenal ulcers that are manifested by recurring symptoms once or twice yearly. Numerous disorders are manifested by anemia and weight loss but are not related. See e.g., DC 5002 (Arthritis rheumatoid (atrophic) “with weight loss and anemia productive of severe impairment of health”). The record shows that the Veteran does not have any recurring symptoms of ulcers of the duodenum necessary for a mild or moderate rating, much less necessary for moderately severe rating. Further, the underlying processes contemplated by DC 7305 leading to anemia and weight loss from the inability to absorb nutrients due to duodenal ulcers are far removed from anemia and weight loss caused by the inability to ingest liquids or solids in the first place. Accordingly, DC 7305 applies to a completely different condition, is not analogous to the Veteran’s eosinophilic esophagitis, and its rating criteria for a compensable rating are not satisfied or more nearly approximated by the Veteran’s symptoms of eosinophilic esophagitis. 

DC 7203, stricture of the esophagus, recites the rating requirements for an 80 percent rating as permitting passage of liquids only, with marked impairment of general health. A 50 percent rating requires severe stricture of the esophagus, permitting liquids only. A minimum rating of 30 percent rating requires moderate stricture of the esophagus.

Considering the evidence of record, shortly after the Veteran’s radiation treatment from April to May of 1999, he presented with dysphagia, the medical term for difficulty swallowing. However, this manifestation improved over a span of a few months in which the Veteran reported in June 1999, that he was able to eat solid foods, including hamburgers. In December 2008, the Veteran’s private physicians noted that the Veteran reported increased difficulty swallowing over the last several months. The physician diagnosed the Veteran with eosinophilic esophagitis based on the dysphagia and mild odynophagia (medical term for painful swallowing) with solids, liquids, and soft foods. The Veteran had difficulty with, but he was able to swallow pills. The Veteran denied regurgitation or nausea, vomiting, or spluttering/coughing when eating. The Veteran was treated with steroids, including prednisolone and budesonide for his difficulty swallowing. It was also noted that if the symptoms did not improve, the Veteran would be a candidate for dilation of his esophagus. An October 2010 private treatment record shows the Veteran reported his difficulty in swallowing, while still present, had improved remarkably since his treatment of esophagitis. The October 2010 record reflects that the Veteran has minimal difficulty swallowing while on the medications. In December 2010, the Veteran’s spouse stated that he had a very difficult time swallowing anything, to include soft foods, water, and medications. These same symptoms are reflected in the Veteran’s December 2010 statement in support of his claim. A July 2012 private treatment record indicates that once the Veteran discontinued the steroid treatments, his symptoms deteriorated. An August 2012 private treatment record indicates that the Veteran underwent dilation for his eosinophilic esophagitis. An October 2012 private treatment record did not indicate that the Veteran continued having severe difficulties with swallowing solid foods, pills, or liquids. A July 2015 private medical record identified that the Veteran had mild irritation or discomfort to the right side of his throat, identifying it as 0-1 out of 10. A July 2017 private treatment record indicates the Veteran continued having mild symptoms with difficulty swallowing foods and that the condition has been stable for a period of time. August 2018 private medical records indicate that the Veteran complained his mouth hurts, his gums were swollen and hurt, and it was hard to swallow. The physician noted that the Veteran had some white spots and irritation in his oral cavity and would start treatment with nystatin oral suspension.

Based on the evidence of record, it is apparent that the Veteran’s symptoms have waxed and waned over time. Nonetheless, the record evidence demonstrates that the impairment due to the service-connected eosinophilic esophagitis more closely approximates moderate stricture of the esophagus, at least for the period from September 10, 2010. Here, the Board finds that at no time does the record evidence show a disability picture productive of stricture of the esophagus as to only permit liquids. Therefore, a 50 percent rating, or greater, is not warranted under DC 7302. 

The Veteran’s eosinophilic esophagitis symptoms, without medication, are best reflected as moderate based on the December 2008 medical records prior to administration of the steroidal medications, and the August 2012 records demonstrated similar symptoms once the medications stopped working and were discontinued. The DC criteria under 7203 do not reference medication, therefore the disability is to be evaluated without taking the treatment into consideration. See Jones v. Shinseki, 26 Vet. App. 56, 63 (2012) (if rating criteria does not identify medication, consider it as if without medication). These are the same symptoms reflected in the Veteran’s and Veteran’s spouse’s statements. These symptoms persisted until the dilation of the Veteran’s esophagus in August. Additionally, subsequent to dilation to treat the Veteran’s eosinophilic esophagitis, the symptoms have been greatly reduced, but still indicated that the Veteran presented with a difficulty swallowing. See July 2015 Private Treatment Record (Veteran reporting mild irritation of the throat); July 2017 Private Treatment Record (Veteran continues having mild symptoms including difficulty swallowing). For these reasons, the Board finds that the Veteran’s signs and symptoms of eosinophilic esophagitis from September 10, 2010, better approximate moderate stricture of the esophagus under DC 7302. Therefore, an initial rating of 30 percent, but no greater, is appropriate, at least for the period from September 10, 2010.

Turning next to the Veteran’s constant oral infections of the mouth, the record contains four private examinations of the Veteran’s oral cavity with opinions as to symptoms and changes secondary to the radiation treatment. Each opinion finds that the Veteran has dry mucosa but no other abnormalities. See July 2017 Private Treatment Record (“Changes secondary to his prior radiation treatment to the head and neck region are noted. A dry oral mucosa is noted. There is no abnormality of the oral cavity, oropharynx or laryngopharynx”); July 2016 Private Treatment Record (“Changes are noted inter-orally secondary to his prior radiation treatment. Dryness of the oral mucosa is noted. No other abnormalities seen”); May 2014 Private Treatment Record (“Examination of the head HEENT system reveals changes secondary to his prior radiation treatment . . . . There is no abnormality of the oral cavity, oropharynx or laryngopharynx”); October 2010 Private Treatment Record (“Examination of the oral cavity and oropharynx does not demonstrate any abnormality other than a dry oral mucosa secondary to his radiation treatment”). The Veteran was also afforded a VA examination in November 2018. The examiner found that there is a greater than 50 percent certainty that the dry mucosa/dry mouth, which is a result of the radiation treatment for the Veteran’s tonsillar cancer, cause the claimed oral infections. 

Considering this evidence together, the VA examiner provides detailed reasoning identifying that the oral infections are caused by the dry mucosa, which both the private and VA opinions attribute to the radiation treatment of the tonsillar cancer. While the private opinions note the dry mucosa, they do not address the Veteran’s Nystatin treatment to suppress symptoms of his oral infections, but all of which were addressed in the VA examiner’s opinion on the issue of oral infections. For the above reasons, the Board finds that the record evidence weighs in favor of finding that the oral infections are a manifested residual of the tonsillar cancer.

Turning to the Veteran’s contentions that his oral infections should be separately rated under DC 7820. Generally, disorders of the mouth and teeth are rated under 38 C.F.R. § 4.150, DCs 9900 through 9918. However, the Veteran argues that his oral infections are more closely approximated by the DC criteria of 7820. DC 7820 applies to “infections of the skin not listed elsewhere.” The Board finds that the Veteran’s oral thrush and lesions are somewhat equivalent to fungal infections and lesions that can affect the skin. Both are capable of topical and systemic treatment and measurement in size and percentage area of coverage. Further, the medication Nystatin, used to treat the Veteran’s thrush and oral lesions, is also available in topical form to treat similar infections of the skin. In either case, the medication is not absorbed into the body. 

DC 7820 is to be evaluated under the General Rating Formula for the skin. For this code section, 38 C.F.R. § 4.118(a) recites systemic therapy is treatment that is administered through any route (orally, injection, suppository, intranasally) other than the skin, and topical therapy is treatment that is administered through the skin. For a 60 percent rating, the evidence must show constant or near-constant systemic therapy including, but not limited to, corticosteroids, phototherapy, retinoids, biologics, photochemotherapy, psoralen with long-wave ultraviolet-A light (PUCA), or other immunosuppressive drugs required over the past 12-month period. For a 30 percent rating, the evidence must show characteristic lesions involving 20 to 40 percent of the entire body or 20 to 40 percent of exposed areas affected; or systemic therapy including, but not limited to, corticosteroids, phototherapy, retinoids, biologics, photochemotherapy, PUVA, or other immunosuppressive drugs required for a total duration of 6 weeks or more, but not constantly, over the past 12-month period. For a 10 percent rating, the evidence must show that the characteristic lesions involve at least 5 percent, but less than 20 percent, of the entire body affected; or characteristic lesions involve at least 5 percent, but less than 20 percent, of exposed areas affected; or intermittent systemic therapy including but not limited to, corticosteroids, phototherapy, retinoids, biologics, photochemotherapy, PUVA, or other immunosuppressive drugs required for a total duration of less than 6 weeks over the past 12-month period. A zero percent (noncompensable) rating requires no more than topical therapy required over the past 12-month period and characteristic lesions involving less than 5 percent of the exposed area affected.

The evidence does not establish that at least 5 percent or more of the entire body or 5 percent or more of any exposed surface was affected for any time period. As such, the Veteran’s symptoms are considered under drug treatment duration.

Nystatin is an antifungal antibiotic that the Veteran took on various occasions beginning in January 2009. In January 2009, the Veteran was prescribed a 10-day dosage of Nystatin with one refill, totaling 20 days of drug treatment. After this initial course, the record notes that the Veteran had a prescription for Nystatin as PRN (as needed). See April 2009 Private Treatment Record; see also October 2010 Private Treatment Record; August 2011 Private Treatment Record. An April 2012 private treatment record identifies a Nystatin prescription as to be taken daily but not the period of time of the prescription. A July 2015 private treatment record indicates that the Veteran was not currently prescribed Nystatin and it was again considered for possible thrush, but refused by the Veteran. The Veteran was again prescribed Nystatin in August 2018, and took it continuously for approximately nine months, ending in June 2019. 

Nystatin is not one of the listed medications or treatments under DC 7820, however the listing is not exclusive. While Nystatin is not clinically considered a systemic therapy because it is too toxic, the Veteran’s oral swish and swallow prescription qualifies, by analogy, as a systemic treatment under 38 C.F.R. § 4.118(a).

Beginning September 10, 2010 to August 29, 2018, the evidence shows that the Veteran received intermittent systemic drug therapy, as rated by analogy, for a total duration of less than 6 weeks over any 12-month period, and thus more closely approximates a 10 percent rating. 

For the time period from August 30, 2018, the record demonstrates that the Veteran took Nystatin from August 30, 2018 through to at least June 6, 2019, a period of nearly nine months. Resolving all reasonable doubt in the Veteran’s favor, the evidence indicates that the Veteran received systemic drug therapy, as rated by analogy, for a total duration of 6 weeks or more, but for less than a 12-month period, and thus more closely approximates a 30 percent rating from August 30, 2018.

A higher rating of 60 percent is not appropriate for any time period because the evidence fails to establish that the received constant or near-constant systemic therapy for any 12-month period. 

Based on the foregoing, the record evidence supports a separate rating for oral infections of the mouth, as disability separate and distinct from the eosinophilic esophagitis, as a residual of the tonsillar cancer. Further, the record evidence establishes a rating of 10 percent, but no greater, from September 10, 2010 to August 29, 2018; and 30 percent disabling, but no greater, from August 30, 2018, under DC 7820, as discussed above. 

2. Entitlement to an initial compensable rating for radiodermatitis. 

The Veteran contends that he is entitled to a compensable rating for his radiodermatitis of his neck and face.

Skin conditions are rated under 38 C.F.R. § 4.118. The Veteran’s radiodermatitis is rated under diagnostic code 7800. For a 10 percent rating, the DC requires one of a scar 5 or more inches in length, a scar at least one-quarter inch wide at its widest part, surface contour of scar elevated or depressed on palpation, scar adherent to underlying tissue, or anyone of the following exceeding six inches in area, hypo-pigmentation, hyper-pigmentation, abnormal skin texture, missing underlying soft tissue, skin induration and inflexibility.

The Veteran waived AOJ jurisdiction for the initial evaluation of evidence, allowing the Board to determine his disability rating based on the evidence submitted in the proper window during this appeal. See Waiver of AOJ Jurisdiction. Thus, Board has jurisdiction to determine this claim on its merits, which includes granting an increased rating, denying the claim in the first instance, or remanding for those reasons legally allowed under the AMA. Under the AMA, a case may only be remanded under specific conditions, one such condition being a pre-decisional duty to assist error. The new evidence submitted with the evidence track after the AOJ decision is post-decisional evidence. Therefore, it does not trigger a pre-decisional duty to assist to remand for an examination.

Turning to the evidence, a May 2014 private treatment record identifies hyper-pigmentation on the right side of the Veteran’s face. However, it does not establish that an area of hyper-pigmentation exceeds six square inches. See id. The evidence further shows that the Veteran has not received any treatment with medication in the last 12 months for this skin condition that covers less than five percent of his total body and less than five percent of his exposed area. See November 2018 VA Examination. The November 2018 VA examiner identified that there is no visible dermatitis, identifying hypersensitivity to touch from the cheek to the collarbone bilaterally. See id.

The Board finds that a remand is inappropriate because the May 2014 private treatment record were received in the evidence submission window, after filing a VA Form 10182 for appeal. As such, there is no pre-decisional duty to assist error requiring a remand for correction. Based on the evidence of record, the Board finds the evidence does not establish entitlement to an increased rating of 10 percent disabling, or greater, under Diagnostic Code 7800 or other applicable diagnostic codes. Because the preponderance of the evidence weighs against a higher rating, the benefit-of-the-doubt rule does not apply. See 38 U.S.C. § 5107; 38 C.F.R. § 3.102. As such, a compensable for radiodermatitis is denied. 

 

 

DEBORAH W. SINGLETON

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board Boushehri, Darjush M.

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.