Citation Nr: 1829598 
Decision Date: 06/26/18 Archive Date: 07/02/18

DOCKET NO. 11-05 644A ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Baltimore, Maryland


THE ISSUE

1. Entitlement to a rating in excess of 50 percent for posttraumatic stress disorder (PTSD).

2. Entitlement to special monthly compensation (SMC) based on housebound status.


REPRESENTATION

Appellant represented by: Disabled American Veterans


ATTORNEY FOR THE BOARD

T. Fitzgerald, Associate Counsel



INTRODUCTION

The Veteran served on active duty from August 1968 to August 1970.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from an October 2008 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in Augusta, Maine. Jurisdiction was subsequently transferred to Baltimore, Maryland.

Relevant evidence has been added to the claims file since the February 2011 statement of the case (SOC). In May 2018, the Veteran's representative submitted a waiver of AOJ consideration.

In an August 2010 rating decision, the RO awarded entitlement to TDIU, effective from December 3, 2008, the date the Veteran met the schedular requirements for eligibility. 

These appeals were processed using the VBMS paperless claims processing system. Accordingly, any future consideration of this Veteran's case should take into consideration the existence of this electronic record, in addition to the Veteran's Virtual VA paperless claims file.


FINDINGS OF FACT

1. The Veteran's PTSD was manifested by occupational and social impairment with reduced reliability and productivity due to symptoms such as social withdrawal, panic attacks more than once a week, irritability, sleep impairment with nightmares, and intrusive thoughts and images of prior combat experiences, but not by occupational and social impairment with deficiencies in most areas.

2. The Veteran is not, by reason of service-connected disabilities, permanently housebound. 


CONCLUSIONS OF LAW

1. The criteria for an evaluation in excess of 50 percent for PTSD are not met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 3.321, 4.1, 4.3, 4.7, 4.130 Diagnostic Code 9411.

2. The criteria for SMC based on housebound status have not been met. 38 U.S.C. §§ 1114(s), 5121; 38 C.F.R. §§ 3.350, 3.352, 3.1000.


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Duties to Notify and Assist

VA has a duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C. §§ 5100, 5102, 5103, 5103A, 5107 (2012); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2017).

The Veteran has not raised any issues with the duty to notify or duty to assist. See Scott v McDonald, 789 F.3d 1375, 1381 (Fed. Cir. 2015) (holding that "the Board's obligation to read filings in a liberal manner does not require the Board . . . to search the record and address procedural arguments when the veteran fails to raise them before the Board."); Dickens v. McDonald, 814 F.3d 1359, 1361 (Fed. Cir. 2016) (applying Scott to duty to assist argument).

The Board finds that the appeal may be considered on the merits.

II. Schedular Ratings

Disability evaluations are determined by the application of the facts presented to VA's Schedule for Rating Disabilities (Rating Schedule) at 38 C.F.R. Part 4. The percentage ratings contained in the Rating Schedule represent, as far as can be practicably determined, the average impairment in earning capacity resulting from diseases and injuries incurred or aggravated during military service and the residual conditions in civilian occupations. 38 U.S.C. § 1155; 38 C.F.R. §§ 3.321(a), 4.1.

In evaluating the severity of a particular disability, it is essential to consider its history. 38 C.F.R. § 4.1; Peyton v. Derwinski, 1 Vet. App. 282 (1991). Where entitlement to compensation has already been established and an increase in the disability rating is at issue, the present level of disability is of primary importance. Francisco v. Brown, 7 Vet. App. 55, 58 (1994). Separate ratings may be assigned for separate periods of time based on the facts found. Hart v. Mansfield, 21 Vet. App. 505 (2007). Staged ratings are not appropriate in this case.

If the evidence for and against a claim is in equipoise, the claim will be granted. 38 C.F.R. § 4.3. A claim will be denied only if the preponderance of the evidence is against the claim. See 38 U.S.C. § 5107; 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 56 (1990). 

Any reasonable doubt regarding the degree of disability should be resolved in favor of the claimant. 38 C.F.R. § 4.3. Where there is a question as to which of two evaluations shall be applied, the higher rating will be assigned if the disability picture more nearly approximates the criteria required for that evaluation. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7.

The Veteran contends he is entitled to an increased rating for his service-connected PTSD.

The Veteran's PTSD has been rated as 50 percent disabling under Diagnostic Code 9411. PTSD is rated using the general formula for mental disorders (general formula). 

Under that formula, a 50 percent rating is assigned for occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short- and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; difficulty in establishing and maintaining effective work and social relationships.

A 70 percent rating is assigned for occupational and social impairment with deficiencies in most areas, such as work, school, family relationships, judgment, thinking or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near- continuous panic or depression affecting ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work-like setting); and inability to establish and maintain effective relationships. 

A 100 percent rating is assigned for total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent ability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; and memory loss for names of closes relatives, own occupation, or own name.

Effective August 4, 2014, VA amended the portion of the Schedule for Rating Disabilities dealing with mental disorders to remove outdated references to the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition (DSM-IV), and replaced them with references to the Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition (DSM-5). See 79 Fed. Reg. 149, 45094 (August 4, 2014). The provisions of the interim final rule apply to all applications for benefits that are received by VA or that were pending before the Agency of Original Jurisdiction (AOJ) on or after August 4, 2014. This appeal was certified to the Board after August 4, 2014, and therefore the DSM-5 is applicable.

In March 2006, the Veteran submitted a claim for entitlement to a rating in excess of 50 percent for his PTSD, stating that he believed his condition had increased in severity and an increased evaluation was warranted. The Veteran did not explain how his symptoms or condition had changed.

A December 2007 VA mental health treatment plan reflected that the Veteran was punctual, and presented in a casual, clean dress, with good personal hygiene. He reported depression and anxiety swings, but not suicidal or homicidal ideation. He maintained good eye contact, and showed fair insight, motivation and cooperation. There were no apparent cognitive deficits or problems with his activities of daily living. The Veteran reported sleep disturbances with occasional nightmares, intrusive thoughts, mood swings with agitation, social isolation, some agoraphobia and hypervigilance, and some survival guilt. 

December 2007 through August 2008 VA mental health treatment reflected that the Veteran was goal directed and attentive. He did not show signs of distraction, suicidal ideation, hostility, anger, confusion, or a flat affect. It was noted in July 2008 that the Veteran was goal directed and attentive, but also withdrawn.

A March 2008 VA mental health treatment plan reiterated the same signs and symptoms that were reported on the December 2007 mental health plan.

April 2008 VA treatment records reflect that the Veteran was alert and oriented x3, as well as cooperative. His mood was anxious and he was mildly irritated. He denied suicidal or homicidal ideation; he also denied any psychotic symptoms. His speech was clear and coherent and his insight was good and judgment intact. 

In June 2008, the Veteran submitted a letter describing an in-service assault that took place against him and reported that the incident would go with him to his grave. 

July 2008 VA treatment records reflect that the Veteran was alert and oriented x3, as well as cooperative. His mood was anxious and he was mildly irritated. He denied suicidal or homicidal ideation; he also denied any psychotic symptoms. His speech was clear and coherent and his insight was good and judgment intact. 

The Veteran was afforded a VA examination in July 2008. He reported anxiety, depression, social withdrawal, irritability, sleep impairment with nightmares, and intrusive thoughts and images of prior combat experiences. He also reported hypervigilance and hyperarousal, enhanced started response, and difficulty communicating with others at home. He told the examiner that a family member was required to make him or herself known to the Veteran so that the Veteran would not react in a defensive manner. The Veteran told the examiner that he was more aware of what his issues were and reported that he continued to experience the same level and intensity of PTSD symptoms. He reported a spike in symptoms if he was exposed to news about the conflict in Iraq or was exposed to traumatic events on the news or in the community. He reported that his sleep medication was helping him sleep longer and that he did not have nightmares or night sweats as frequently. He also stated that he did not have any significant difficulty relating to others at home. The Veteran told the examiner that he periodically thought he saw something crawling on the walls when there was nothing there, and sometimes had the sensation of something crawling on him when nothing was there. He reported that he continued to be married to his spouse of 33 years and that they had a good relationship. He also maintained a relationship with his son. The Veteran explained that he was retired, but drove his wife to work daily and then went to the gym to swim and exercise because he found it to be relaxing. He also had a hobby of working on old cars and enjoyed spending time with his dog and listening to old music. The Veteran reported that he retired two years ago, but that it was unrelated to the effects of his PTSD.

The examiner determined that while the Veteran isolated himself, he interacted with others appropriately, engaged in social activities, was capable of basic activities of daily living, was able to meet family responsibilities and was able to meet work demands and responsibilities. There was no impairment of thought process or communication. The Veteran denied suicidal or homicidal ideation. He was able to maintain personal hygiene and basic activities of daily living. He was oriented to person, place and time. The examiner noted that the Veteran experienced mild short term memory loss. The Veteran reported that he obsessively checked the doors and windows at night even though they had an alarm system. He also reported mild to severe panic attacks daily. The examiner noted mild to severe levels of sporadic depression and anxiety. There was no evidence of impaired impulse control. The examiner determined that the Veteran's severity of symptoms could be classified as medium. The duration and frequency of his symptoms were sporadic. He stated that the Veteran's PTSD symptoms moderately impacted his activities of daily living, routine responsibilities, physical health, relationships, leisure activities, and quality of life. 

November 2008 private treatment reflects that the Veteran reported that his PTSD symptoms had improved since he retired from his job.

November 2008 and January 2009 VA mental health treatment reflects that the Veteran was alert and oriented x3, as well as cooperative. His mood was anxious and he was mildly irritated. He denied suicidal or homicidal ideation, he also denied any psychotic symptoms. His speech was clear and coherent and his insight was good and judgment intact. 

February 2009 private treatment records reflect that the Veteran was alert and attentive, oriented x3, and that his mood and affect were generally pleasant.

In April 2009, the Veteran reported that he was unable to work because of his PTSD symptoms. 

In May 2009, the Veteran submitted a form stating that after 35 years of employment with the same employer, he had to stop work in March 2005 because of his PTSD symptoms. He reported that his work environment required heightened security. He said he no longer felt that the work environment was safe. Along with this form, a private physician reported that the Veteran was found to be permanently disabled for the purposes of veteran's benefits and unable to work due to his PTSD. 

The Board notes that the Veteran was granted a total rating based on individual unemployability (TDIU), effective December 3, 2008. 

February 2010 VA treatment records reflect that the Veteran's was alert and oriented x3, as well as cooperative. His mood was anxious and he was mildly irritated. He denied suicidal or homicidal ideation; he also denied any psychotic symptoms. His speech was clear and coherent and his insight was good and judgment intact.

February through May 2010 VA mental health treatment reflect that the Veteran was goal directed, appropriate to task, and attentive. He did not show signs of distraction, suicidal ideation, hostility, anger, confusion, or a flat affect. 

The Veteran underwent an additional VA examination in February 2011. He reported that he had been married to his spouse for 37 years and spoke daily with his son. He told the examiner that he did not have friends but that he attended church regularly and the gym when it was less crowded. He also reported enjoying old cars. The examiner determined that the Veteran was able to maintain personal hygiene and basic activities of daily living. He was oriented to person, place and time. The Veteran did have memory loss, explaining that sometimes he had to look for something familiar when driving, and would sometimes lose his train of thought. He reported that he sometimes went back to check his home after he had left to make sure he set the alarm and locked the doors. He reported that he still experienced panic attacks but that it was less frequent since taking anxiety medication. There was no evidence of depression or anxiety, and no signs of impaired impulse control. He reported sleep impairment. The Veteran told the examiner that he retired in 2006 after working for 35 years as a train operator. He stated that he planned to work until he was 65 but that he was consistently hearing announcements on the loud speakers asking individuals to be vigilant and aware of suspicious packages. He said that it proved to be to anxiety provoking for him and he decided to retire early.

The examiner determined that while the Veteran isolated himself, he interacted with others appropriately, engaged in social activities, was capable of basic activities of daily living, was able to meet family responsibilities and was able to meet work demands and responsibilities. There was no impairment of thought process or communication; there were no reported delusions or hallucinations. The Veteran denied suicidal or homicidal ideation. He was able to maintain personal hygiene and basic activities of daily living. He was oriented to person, place and time. The examiner determined that the Veteran's severity of symptoms could be classified as mild to moderate. The duration and frequency of his symptoms were chronic and continuous. The examiner noted that the Veteran was not unemployable, and that his PTSD symptoms would not affect his employment. 

The Board finds that a rating for PTSD in excess of 50 percent is not warranted at any time during the period of the appeal. Considering the entire disability picture with emphasis on occupational and social function, the Board finds that his PTSD is best evaluated as occupational and social impairment with reduced reliability and productivity with symptoms characteristic of PTSD such as social withdrawal, panic attacks, irritability, sleep impairment with nightmares, and intrusive thoughts and images of prior combat experiences. 

In this case, the Board has considered the requirement of 38 C.F.R. § 4.3 to resolve any reasonable doubt regarding the level of the Veteran's disability in his favor. The Board concludes, however, that the symptoms and manifestations of his PTSD as shown during the VA examinations, treatment records, and in statements by the Veteran, do not demonstrate a degree of disability that warrants assignment of a rating greater than 50 percent. See 38 C.F.R. § 4.7. Furthermore, although there are times when the manifestations wax and wane, the symptoms and manifestations shown throughout the Veteran's treatment are for the most part consistent throughout the pendency of this appeal or, to the extent that they are not consistent, would warrant a rating less than 50 percent. For this reason, staged ratings are not applicable.

The Board notes that the Court of Appeals for the Federal Circuit (Federal Circuit) recently held in Vazquez-Claudio v. Shinseki, 713 F.3d 112 (Fed. Cir. 2013) that "in the context of a 70 percent rating, § 4.130 requires not only the presence of certain symptoms but also that those symptoms have caused occupational and social impairment in most of the referenced areas." 

In many of the mental health reports, as well as the VA examinations of record, the Veteran has reported and the examiner has noted sleep impairment; recurrent, involuntary, and intrusive distressing memories; avoidance behavior; irritability; hypervigilance; occasional displays of obsessional rituals, exaggerated startle response; panic attacks; and isolative behaviors. The Veteran, however, has almost universally denied suicidal ideation; and never exhibited illogical, obscure, or irrelevant speech. He has denied near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; reported spatial disorientation; or exhibited neglect for personal appearance or hygiene. The Board recognizes that the Veteran has had problems with panic attacks and periodically displays of obsessive rituals, but this does not appear to impact his ability to function socially, meet family responsibilities, or meet work demands and responsibilities. 

The Board recognizes that the Veteran has reported that his PTSD symptoms caused him to retire early, however he has also told examiners that his PTSD symptoms did not play a role in his decision to leave his job. Additionally, both VA examinations determined that the Veteran's PTSD would not impede on his ability to meet work demands and responsibilities.

Furthermore, in July and November 2008 the Veteran reported that he thought his symptoms had improved. 

The Veteran did not exhibit suicidal ideation, speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; or the inability to establish and maintain effective relationships. On the contrary, he displayed appropriate hygiene, adequate concentration and judgment, unremarkable speech, logical thought processes, mood appropriate to content with congruent affect, and good insight. Though the Veteran reported isolation, he also consistently reported a solid long term marriage and a positive and continuous relationship with his son, as well as regular church and gym attendance.

A higher rating for PTSD is not warranted because the level of occupational and social impairment is not in most areas or total. The Veteran does not display deficiencies in communications, thought processes, or daily functions. His family relationships are intact, and he is regularly leaves his home to go to church and the gym. 

In a May 2018 brief to the Board, the Veteran's representative contended that the Board must address the severity of a service-connected disability without considering the ameliorative effects of medication, citing Jones v. Shinseki, 26 Vet.App. 56, 63 (2012) (explaining that the Board may not consider the ameliorative effects of medication if such relief is not explicitly mentioned in the rating criteria. The representative acknowledged that medication is considered for rating mental health conditions but only at the 10 percent level. The Board disagrees because the effects of medication are addressed in the rating criteria which is progressive and contemplates successive increments of increasing levels of impairment building on those present at a lower level. The Court in Jones cited similar rating criteria with these features as examples were the effects of medication are contemplated. 

As noted in the Introduction, the AOJ granted a TDIU effective December 3, 2008, the date the Veteran met the schedular requirements for eligibility. The Veteran did not appeal the effective date. Prior to December 3, 2008, the Veteran did not meet the schedular requirements for a TDIU rating. Additionally, as discussed above, prior to becoming eligible for a TDIU rating, the Veteran denied that his PTSD symptoms impacted his ability to work. Once the Veteran was made aware that he was eligible to apply for a TDIU rating, he reported that loud speaker announcements in the rail system where he worked caused anxiety which led to his departure. However, there is nothing in the record to suggest that the Veteran would not have been able to perform a different occupation prior to December 3, 2008. 

In conclusion, the evidence of record reflects symptoms and a level of social and occupational impairment best approximated by the current 50 percent rating as to the Veteran's PTSD. 

The evidence of record does not reflect that the Veteran suffers from occupational and social impairment with deficiencies in most areas, and as a result, entitlement to a rating in excess of 50 percent for PTSD is denied. 38 U.S.C. § 1155 (2012); 38 C.F.R. § 4.130, Diagnostic Code 9411 (2017).

III. Additional Considerations

In May 2018, the Veteran's representative argued that the issue of entitlement to special monthly compensation (SMC) by reason of being permanently housebound was raised by the record.

Pursuant to 38 U.S.C. § 1114(s), SMC is payable, as relevant, if by reason of a veteran's service-connected disability or disabilities, they are permanently housebound. The requirement of "permanently housebound" will be considered to have been met when the veteran is substantially confined to such veteran's house or immediate premises due to a service-connected disability or disabilities which it is reasonably certain will remain throughout such veteran's lifetime. See 38 U.S.C. § 1114(s); 38 C.F.R. § 3.350(i)(2).

Special monthly compensation at the housebound rate is payable where a veteran has a single service-connected disability rated as 100 percent and: (1) has additional service-connected disability or disabilities independently ratable at 60 percent, separate and distinct from the 100 percent service-connected disability and involving different anatomical segments or bodily systems, or (2) is permanently housebound by reason of service-connected disability or disabilities. 38 U.S.C. § 1114(s); 38 C.F.R. § 3.350(i). When a Veteran is awarded TDIU based on a single disability and receives schedular disability ratings for other conditions, SMC based on the statutory housebound criteria may be awarded so long as the same disability is not counted twice, i.e., as a basis for TDIU and as a separate disability rated 60 percent or more disabling. See 75 Fed. Reg. 11,229, 11,230, Summary of Precedent Opinions of the VA General Counsel (March 10, 2010) (withdrawing VAOPGCPREC 6-1999 in light of Bradley v. Peake, 22 Vet. App. 280 (2008)).

An August 2010 rating decision awarded the Veteran a TDIU from December 2008 to May 2014 based on his service-connected disabilities (multiple), but only discussed a medical assessment of the impact of the Veteran's PTSD on his ability to work in his job as a station manager for a city rail transport system. 

A March 2015 rating decision increased the Veteran's service-connected renal insufficiency with hypertension to 60 percent disabling, subsequently increasing the Veteran's combined disability rating to 100 percent, effective May 2014. The RO then terminated the TDIU in lieu of the Veteran's new combined 100 percent rating. 

The Veteran's representative argues that the Veteran is entitled to SMC because he was originally granted a TDIU based solely on his service-connected PTSD. Neither the Veteran nor his representative have argued that the Veteran is permanently housebound due to his service-connected disabilities, only that SMC based on the statutory housebound criteria should be awarded because the Veteran had a TDIU based on a single disability and received schedular disability ratings for other conditions. 

The Board disagrees. The Veteran's PTSD has been rated as 50 percent disabling since November 2002. A TDIU may be assigned where the schedular rating is less than total and it is found that the disabled person is unable to secure or follow a substantially gainful occupation as a result of either (1) a single service-connected disability ratable at 60 percent or more, or (2) two or more disabilities, provided at least one disability is ratable at 40 percent or more, and there is a sufficient additional service-connected disabilities to bring the combined rating to 70 percent or more. 38 C.F.R. §§ 3.340, 3.341, 4.16(a). 

In this case, the Veteran would not meet the threshold criteria to qualify for a TDIU based on his PTSD alone, because his PTSD has never been rated at least 60 percent disabling. Moreover, the evidence noted above does not support preclusion of all forms of substantially gainful employment solely because of PTSD. The medical evidence mentioned in the rating decision specifically addresses impairment because of the circumstances of the Veteran's last employment only and for the employer's insurance purposes. Additionally, the August 2010 rating decision specifically states that the Veteran was awarded a TDIU based on his service-connected disabilities, insinuating that more than one disability was taken under consideration. This notion is reinforced by the fact that the RO terminated the TDIU once the Veteran's combined disability rating became 100 percent.

Furthermore, as discussed above, the Board has determined that the Veteran's PTSD does not warrant a rating greater than 50 percent.

As such, the Board concludes that the criteria for SMC based on housebound status have not been met. 38 U.S.C. §§ 1114(s), 5121; 38 C.F.R. §§ 3.350, 3.352, 3.1000. 

The Board notes that neither the Veteran nor his representative has raised any other issues, nor have any other issues been raised by the record. See Doucette v. Shulkin, 28 Vet.App. 366 (2017)(confirming that the Board is not required to address issues unless they are specifically raised by the claimant or reasonably raised by the evidence of records).


ORDER

Entitlement to a rating in excess of 50 percent for PTSD is denied.

Entitlement to SMC based on housebound status is denied.




______________________________________________
J. W. FRANCIS
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs