﻿Citation Nr: AXXXXXXXX
Decision Date: 11/30/20 Archive Date: 11/30/20

DOCKET NO. 181004-1477
DATE: November 30, 2020

ORDER

New and relevant evidence has been received to readjudicate the claim of entitlement to service connection for an eye disorder other than right eye pterygium. 

Entitlement to service connection for dry eyes is granted.

Entitlement to a rating in excess of 10 percent for bilateral hallux valgus is denied. 

Entitlement to a 50 percent rating for sinus headaches is granted from January 26, 2015.

REMANDED

Entitlement to a rating in excess of 10 percent for bilateral hip bursitis is remanded. 

FINDINGS OF FACT

1. New evidence has been received after the May 2015 denial that is relevant to the issue of entitlement to service connection for an eye disorder other than right eye pterygium. 

2. The Veteran’s dry eyes had their onset during active duty.

3. The Veteran has been in receipt of a maximum 10 percent schedular rating for her bilateral hallux valgus under applicable Diagnostic Code (DC) 5280 for the entire appeal period.

4. For the entire appeal period, the Veteran’s sinus headaches have been equivalent in nature and severity to frequent completely prostrating and prolonged attacks productive of severe economic inadaptability, especially when considered without regard to the ameliorative effects of medication.

CONCLUSIONS OF LAW

1. The criteria for readjudicating the claim for service connection for an eye disorder other than right eye pterygium are met. 38 C.F.R. § 3.156(d).

2. The criteria for entitlement to service connection for dry eyes are met. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303.

3. The criteria for a rating in excess of 10 percent for bilateral hallux valgus are not met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 3.321, 4.7, 4.71a, DC 5280.

4. Since January 26, 2015, the criteria for a maximum 50 percent disability rating for sinus headaches are met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.1, 4.2, 4.3, 4.7, 4.124a, DC 8100.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty in the United States Navy from July 1981 to February 2004. 

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with VA’s decision on their claim to seek review. This decision has been written consistent with the new AMA framework. 

In February 2018, the Veteran selected the Higher-Level Review lane when she opted into the AMA review system by submitting a Rapid Appeals Modernization Program (RAMP) election form. Accordingly, the June 2018 AMA rating decision considered the evidence of record as of the date VA received the RAMP election form. The Veteran timely appealed this rating decision to the Board and requested the AMA Hearing Lane. In December 2019, the Veteran testified before the undersigned Veterans Law Judge. The 90-day period for submitting evidence following the Board hearing has lapsed and the Board will proceed with adjudication.

The Agency of Original Jurisdiction (AOJ) made no favorable findings in the June 2018 rating decision. 38 C.F.R. § 3.104(c). 

New and Relevant Evidence 

1. New and relevant evidence has been received to readjudicate the claim of entitlement to service connection for an eye disorder other than right eye pterygium.

The Veteran maintains that she submitted evidence with her legacy system petition to reopen the claim for service connection for an eye disorder other than right eye pterygium that is new and relevant and warrants readjudication of the issue. In this regard, the Board emphasizes that the Veteran is already service-connected for right eye pterygium, so that disability is not part of the instant inquiry. 

VA will readjudicate a claim if new and relevant evidenced is presented or secured. 38 C.F.R. § 3.156(d). “Relevant evidence” is evidence that tends to prove or disprove a matter in issue. 38 C.F.R. § 3.2501(a)(1).

The question in this case is whether the Veteran submitted evidence after the prior decision on her claim for service connection for an eye disorder other than right eye pterygium in the legacy system, and if so, whether that evidence is new and relevant to her claim. 

Here, the Board finds that the Veteran has submitted new evidence after the prior decision in the legacy system that is relevant to her claim. Specifically, the May 2015 prior rating decision determined that the Veteran’s claimed changes in vision, or refractive error of the eye, following her LASIK procedure constituted a congenital or a developmental defect and therefore could not be service connected. 38 C.F.R. §§ 3.303(c), 4.9; see also VAOPGCPREC 82-90 (1990). Thus, she did not have a current diagnosis of an eye disability that could be service-connected for VA purposes. However, in a July 2015 VA examination report, the examiner diagnosed the Veteran with dry eyes, which is new current acquired disability. Thus, the Board finds that the July 2015 diagnosis of dry eyes constitutes new evidence that was submitted after the prior May 2015 rating decision in the legacy system that is relevant to her claim. Thus, readjudication of the claim is warranted. 

Service Connection

2. Entitlement to service connection for dry eyes is granted.

The Veteran asserts that her dry eyes disability had its onset during service due to working in the field with constant exposure to dirt in her eyes. To this end, she maintains that her eyes began stinging and becoming dry while wearing contacts and that this led her to have LASIK surgery during service. See December 2019 Board Hearing Transcript (Tr.) at 18-26. As noted above, the Veteran is already separately service-connected for right eye pterygium and refractive error is a congenital or developmental defect and is not available for service connection, thus the only diagnosis that will be addressed in the instant decision is dry eyes.

Service connection may be granted for a disability resulting from disease or injury incurred in active service and for in-service aggravation of a preexisting injury or disease. 38 U.S.C. §§ 1110, 1131; 38 C.F.R. § 3.303(a). Generally, the evidence must show: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred in or aggravated during service. Shedden v. Principi, 381 F.3d 1163, 1166-67 (Fed. Cir. 2004). 

In making all determinations, the Board must fully consider the lay assertions of record. A layperson is competent to report on the onset and recurrent symptoms. See Layno v. Brown, 6 Vet. App. 465, 470 (1994) (a veteran is competent to report on that of which he or she has personal knowledge). Lay evidence can also be competent and sufficient evidence of a diagnosis or to establish etiology if (1) the layperson is competent to identify the medical condition, (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional. Davidson v. Shinseki, 581 F.3d 1313, 1316 (Fed. Cir. 2009); Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007). When considering whether lay evidence is competent the Board must determine, on a case by case basis, whether the Veteran’s particular disability is the type of disability for which lay evidence may be competent. Kahana v. Shinseki, 24 Vet. App. 428 (2011); see also Jandreau, 492 F.3d at 1377 (holding that “[w]hether lay evidence is competent and sufficient in a particular case is a factual issue to be addressed by the Board”). 

Here, the Veteran is competent to report current dry eyes, and the July 2015 VA examiner confirms diagnosis of the same. See July 2015 VA examination report. Additionally, her service treatment records (STRs) document her complaints of an eye disorder or trouble and note she underwent LASIK in January 2000. See August 2003 STRs. In this regard, she has competently and credibly reported that she first experienced stinging and dry eyes during service and that her eyes have been dry continuously ever since. Thus, elements one and two of service connection are met. 

Regarding the final element, nexus, the Veteran is competent to determine that her in-service dry eyes are of the same nature as her post-service dry eyes; thus, she is competent to establish a nexus between her current dry eyes and service, and her statements in this regard are supported by her STRs and other information of record. Moreover, there is no adequate competent evidence to the contrary. Accordingly, service connection for dry eyes is established. 38 C.F.R. § 3.303.

Increased Ratings

Disability ratings are determined by the application of rating criteria set forth in the VA Schedule for Rating Disabilities (38 C.F.R. Part 4) based on the average impairment of earning capacity. Separate diagnostic codes identify the various disabilities. 38 U.S.C. § 1155.

Where there is a question as to which of two ratings shall be applied, the higher rating will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. See 38 C.F.R. § 4.7. 

Additionally, while it is not expected that all cases will show all the findings specified, findings sufficiently characteristic to identify the disease and the disability therefrom and coordination of rating with impairment of function will be expected in all instances. 38 C.F.R. § 4.21. The primary concern for an increased rating for a service-connected disability is the present level of disability. Although the overall history of the disability is to be considered, the regulations do not give past medical reports precedence over current findings. Francisco v. Brown, 7 Vet. App. 55, 58 (1994). Staged ratings are appropriate when the evidence establishes that the claimed disability manifested symptoms that would warrant different ratings for distinct time periods during the course of the appeal. Fenderson v. Brown, 12 Vet. App. 119, 126-127 (1999).

3. Entitlement to a rating in excess of 10 percent for bilateral hallux valgus is denied.

The Veteran is currently assigned a 10 percent rating for her service-connected right hallux valgus and a 10 percent rating for her service-connected left hallux valgus. The appeal period is from January 26, 2015, the date of her increased rating claim, plus the one-year “look back” period. Gaston v. Shinseki, 605 F.3d 979, 982 (Fed. Cir. 2010).

Hallux valgus is specifically contemplated under 38 C.F.R. § 4.71a, DC 5280. Under DC 5280, a maximum rating of 10 percent is assigned for unilateral hallux valgus that is severe, if equivalent to amputation of great toe and if operated with resection of metatarsal head. 

Here, there is no legal basis for assigning a higher in excess of the10 percent ratings for each foot under DC 5280. The Board emphasizes that only DC 5280 may be considered in evaluating her claim. See Copeland v. McDonald, 27 Vet. App. 333, 337 (2015) (when a condition is specifically listed in the rating schedule, it may not be rated by analogy and should be rated under the diagnostic code that specifically pertains to it). Thus, an increased rating in excess of 10 percent ratings as currently assigned must be denied. 

4. Entitlement to a 50 percent rating for sinus headaches is granted from January 26, 2015.

The Veteran’s headaches are currently rated pursuant to DC 8199-8100. See 38 C.F.R. § 4.27 (hyphenated diagnostic codes are used when a rating under one diagnostic code requires use of an additional diagnostic code to identify the basis for the evaluation assigned; the additional diagnostic code is shown after the hyphen; unlisted disabilities requiring rating by analogy will be coded by the numbers of the most closely related body part and “99”). The Board notes that when the particular service-connected disability is not listed in the rating schedule, it may be rated by analogy to a closely related disease in which not only the functions affected, but also the anatomical location and symptomatology are closely analogous. 38 C.F.R. §§ 4.20, 4.27. Here, the RO has determined that the Veteran’s sinus headaches are most appropriately rated under DC 8100 pertaining to migraine headaches. Under DC 8100, a noncompensable rating is warranted for headaches with less frequent attacks. A 10 percent disability rating is warranted for headaches with characteristic prostrating attacks averaging one in two months over the last several months. A 30 percent disability rating is warranted for headaches with characteristic prostrating attacks occurring on an average once a month over the last several months. A maximum 50 percent disability rating is warranted for headaches with very frequent, completely prostrating, and prolonged attacks productive of severe economic inadaptability. 38 C.F.R. § 4.124a, DC 8100. 

The Veteran is currently assigned a noncompensable rating for her service-connected sinus headaches. The appeal period is from January 26, 2015, the date of her increased rating claim, plus the one-year “look back” period. Gaston, 605 F.3d 979, 982.

The Veteran was afforded a VA examination in April 2015. The Veteran reported headaches associated with sinus infections that are currently intermittent in nature. The VA examiner noted pain medications are part of her treatment plan including Tylenol and Motrin as needed. The examiner also noted constant pulsating or throbbing head pain on both sides of her head lasting less than one day. The examiner endorsed very frequent prolonged and prostrating attacks of non-migraine head pain occurring more than once a month. The examiner noted that the Veteran’s ability to work was impacted in that she had loss of focus and concentration during headache episodes.

In a July 2015 Notice of Disagreement (NOD), the Veteran reported constant severe sinus headaches. 

In a November 2019 Headaches Disability Benefits Questionnaire (DBQ), the Veteran reported a history of sinus headaches that “come without a known trigger”. Pain medications, namely Ibuprofen, were noted as a part of her treatment plan for flare-ups. The examiner noted constant pulsating or throbbing head pain localized on the right side of her head lasting one to two days and worsened with physical activity. Sensitivity to light was listed as symptoms of her headaches. The examiner endorsed very frequent prolonged and prostrating attacks of non-migraine head pain occurring more than once a month. The examiner noted that the Veteran’s ability to work was impacted, as with flare-up of the condition she had to lie down in dark room until the symptoms subsided and was unable to perform daily or occupational tasks during flare-ups due to the severe pain on right side of the head. The examiner also noted the Veteran experienced at least one incapacitating headache every two to three weeks.

During the December 2019 Board hearing, the Veteran testified to having prostrating headaches two to three times per month where she must lie in a dark room. See Board Hearing Tr. at 11. She also stated that she took medications to alleviate her pain and that she increased her usage of Flonase and Claritin when she feels a headache coming. Id. at 13-14.

Upon consideration of the evidence of record, the Board finds that the Veteran’s sinus headache disability has more nearly approximated the criteria for a maximum 50 percent disability rating under DC 8100 for the entire appeal period. In so finding, the Board notes that neither the rating criteria nor the United States Court of Appeals for Veterans Claims (Court) has defined “prostrating.” However, “prostration” is defined as “extreme exhaustion or powerlessness,” (Dorland’s Illustrated Medical Dictionary 1554 (31st ed. 2007)), or as “physically or emotionally exhausted,” Webster II New College Dictionary 889 (3rd ed. 2001).

In the instant case, although it appears the frequency of the Veteran’s sinus headaches has increased during the pendency of her claim, the reported nature and severity, to include associated symptoms, has been relatively consistent. The Veteran has reported having persistent sinus headaches, occurring two to three times per month and lasting up to two days, which the April 2015 VA examiner and November 2019 physician determined were very frequent and prolonged prostrating attacks. The Veteran’s headaches are also accompanied by sensitivity to light and she has reported that at times lying down in a dark room is her only relief from pain. Additionally, the Board finds that her headaches are productive of severe economic inadaptability, which neither the rating criteria nor the Court has defined. To this end, the April 2015 VA examiner and November 2019 physician noted the Veteran’s ability to work is impacted by her sinus headaches due to her loss of concentration and focus, and that with incapacitating episodes she has to lie in a dark room until the symptoms subside and the pain prevents her from performing occupational tasks during this time. Given that her prostrating and incapacitating headaches occur more than once a month and can last up to two days, the Board finds this to be equivalent in nature to severe economic inadaptability as she would not be able to function in a work environment during these episodes. 

Furthermore, it is clear that the Veteran regularly takes medications to manage her sinus headaches, and they are not always effective in relieving her pain. Notably, the Court has held that “the Board may not deny entitlement to a higher rating on the basis of relief provided by medication when those effects are not specifically contemplated by the rating criteria.” Jones v. Shinseki, 26 Vet. App. 56, 63 (2012). As DC 8100 does not contemplate the effects of medication in alleviating the frequency and duration of the Veteran’s sinus headaches, the Board is precluded from considering the relief afforded by the Veteran’s medication, if any, in evaluating the severity of her disability. Id. 

Overall, the Board finds that when resolving reasonable doubt in the Veteran’s favor and considering the relief provided by medication, her sinus headaches are more aptly described by the criteria for a 50 percent rating for the entire appeal period, which is the highest schedular rating available under DC 8100.

REASONS FOR REMAND

4. Entitlement to a rating in excess of 10 percent for bilateral hip bursitis is remanded.

The Veteran was afforded a VA examination in April 2015 and another examination in November 2019. However, neither of these examinations are compliant with the criteria set forth in Correia v. McDonald, 28 Vet. App. 158 (2016) and Sharp v. Shulkin, 29 Vet. App. 26 (2017). Thus, a new VA examination is warranted on remand and should be obtained on remand to correct this pre-decisional duty to assist error. 38 U.S.C. § 20.802(a). 

The matters are REMANDED for the following action:

Schedule the Veteran for a VA examination to determine the current nature and severity of his bilateral hip disability. The claims file should be made available to and reviewed by the examiner and all findings should be reported in detail.

(a) The examiner should conduct all indicated tests and studies, to include range of motion studies. The joints involved should be tested for pain (1) on active motion, (2) on passive motion, (3) in weight-bearing, (4) in nonweight-bearing, and, if applicable (5) with range of motion of the opposite undamaged joint. The examiner should note where the pain begins for all range of motion results. If the examiner is unable to conduct the required testing or concludes that the required testing is not necessary in this case, he or she should clearly explain why that is so.

(b) Considering the Veteran’s reported history, please also provide an opinion describing functional impairment of the Veteran’s bilateral hip disability due to flare-ups, accounting for pain, incoordination, weakened movement, and excess fatigability on use, and, to the extent possible, report such impairment in terms of additional degrees of limitation of motion. If unable to provide such an opinion without resorting to speculation, please provide a rationale for this conclusion, with specific consideration of the instructions in the VA Clinician’s Guide to estimate, “per [the] veteran,” what extent, if any, flare-ups affect functional impairment.

 

 

S. BUSH

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board R. Asante

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.