# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 23-1798

CARLTON H. INGRAM, APPELLANT,

v.

DOUGLAS A. COLLINS,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued November 7, 2024                                    Decided March 12, 2025)

*Louis J. George*, of Arlington, Virginia, for the appellant.

*Andrew D. Countryman*, with whom *Richard J. Hipolit*, Deputy General Counsel; *Mary Ann Flynn*, Chief Counsel; and *Mark D. Vichich*, Deputy Chief Counsel, all of Washington, D.C., were on the brief for the appellee.

Before PIETSCH, BARTLEY, and LAURER, *Judges*.

BARTLEY, *Judge*: Veteran Carlton Ingram appeals through counsel a November 29, 2022, Board of Veterans' Appeals (Board) decision that denied entitlement to a back disability evaluation greater than 20% and left ankle disability evaluation greater than 10%. Record (R.) at 5-20.[1] This appeal is timely, and the Court has jurisdiction to review the Board decision pursuant to 38 U.S.C. §§ 7252(a) and 7266(a). This matter was referred to a panel of the Court, with oral argument,[2] to address how *Jones (David J.) v. Shinseki*, 26 Vet.App. 56, 63 (2012), applies when evaluating Mr. Ingram's musculoskeletal conditions. *Jones* requires the Board to discount beneficial medication effects when relevant rating criteria do not specifically contemplate medication use. The question

---

[1] The Board granted a 20% evaluation for the back. Because that determination is favorable to Mr. Ingram, the Court will not disturb it. *See Medrano v. Nicholson*, 21 Vet.App. 165, 170 (2007) ("The Court is not permitted to reverse findings of fact favorable to a claimant made by the Board pursuant to its statutory authority."), *aff'd in part, dismissed in part sub nom. Medrano v. Shinseki*, 332 F. App'x 625 (Fed. Cir. 2009). The Board remanded the issue of service connection for a left hip disability. Because a remand is not a final decision of the Board subject to judicial review, the Court does not have jurisdiction to consider that issue at this time. *See Howard v. Gober*, 220 F.3d 1341, 1334 (Fed. Cir. 2000); *Breeden v. Principi*, 17 Vet.App. 475, 478 (2004) (per curiam order); 38 C.F.R. § 20.1100(b) (2024).

[2] *Ingram v. McDonough*, U.S. Vet. App. 23-1798 (oral argument held Nov. 7, 2024), *available at* https://www.youtube.com/watch?v=o0NdQQp7K6E. In this opinion, time codes for the oral argument are based on the YouTube video, which differ from the mp3 audio file available on the Court's website.

before this panel is how VA should apply that rule when evaluating musculoskeletal disabilities, considering that special VA regulations [3] and caselaw require that VA consider functional impairment and impairment during flare-ups. For the reasons that follow, and in accordance with our holding in *Jones*, we conclude that, because the applicable diagnostic codes (DCs) and special musculoskeletal regulations do not reference medication, the Board must discount beneficial medication effects when assigning an evaluation. And because the Board did not do so here when assessing the severity of Mr. Ingram's back and left ankle disabilities, the Court will set aside the November 2022 Board decision and remand the matter for additional development and readjudication consistent with this decision.

## I. FACTS

Mr. Ingram served in the U.S. Army from July 1985 to August 1992 with reserve service from November 1993 to October 1994. R. at 3581, 4678.

In May 2012, Mr. Ingram underwent VA examinations for his left ankle and back disabilities, during which the examiner noted that the veteran took over-the-counter medication for pain relief for both disabilities. R. at 4429, 4436-37. In August 2012, a VA regional office (RO) granted service connection for back and left ankle disabilities, assigning each an initial 10% evaluation, effective March 16, 2011. R. at 4409-13. Mr. Ingram then filed a Notice of Disagreement, challenging the back and ankle evaluations, R. at 4329-31, and in March 2015 timely perfected an appeal to the Board, R. at 2694; *see* R. at 2730-70 (February 2015 Statement of the Case). In April 2015, he consented to "long-term opioids for pain." R. at 2042 (capitalization altered).

During a September 2017 Board hearing, Mr. Ingram testified that his May 2012 examinations did not correctly reflect his disabilities' severity; for instance, he indicated that although the examiner noted that his back range of motion (ROM) was 90 degrees, he could not bend all the way over while standing up. R. at 2407-08; *see* R. at 4437 (May 2012 back examination). He testified that a doctor had recommended back surgery, that his back and ankle symptoms had worsened since the May 2012 examinations, and that he took tramadol and wore ankle and back braces. R. at 2408-14.

---

[3] The most prominent special regulations that apply when VA evaluates musculoskeletal and joint conditions, other than the specific DCs that are contained in 38 C.F.R. § 4.71a, are 38 C.F.R. §§ 4.40, 4.45, and 4.59.

After the Board hearing, Mr. Ingram filed claims for lower extremity radiculopathy secondary to the back disability, prompting VA to afford him a back examination in October 2017. During this examination, the veteran reported medication use for symptom management and recurrent back pain impacting his ability to bend, lift, sit, stand, and walk. R. at 1730. The examiner indicated that Mr. Ingram experienced pain in flexion, extension, and rotation movements, which limited ROM and caused functional loss. R. at 1731.

In June 2018, the Board, based on the veteran's testimony and finding that the October 2017 VA back examination was inadequate, remanded the back and ankle claims for VA to obtain new examinations. R. at 1419. In October 2019, Mr. Ingram underwent VA back and ankle examinations. R. at 1171-87. As to the back, the examiner noted that flares significantly limited the veteran's functional ability, causing him to miss work. R. at 1172-73. As to the ankle, the examiner noted the veteran's report of functional loss associated with prolonged standing and walking, R. at 1181, but opined that the pain he demonstrated did not cause functional loss, R. at 1182.

In April 2020, the RO increased the veteran's back evaluation to 20%, effective October 30, 2019. R. at 1144. In January 2021, the Board denied higher evaluations for both disabilities. R. at 720-34. Mr. Ingram timely appealed to this Court, which in January 2022 granted the parties' joint motion for remand, which required that the Board address the adequacy of the October 2019 VA examinations regarding functional loss and additional limitation of motion during flares. R. at 579-88; *see* R. at 589 (Court order granting parties' motion). In May 2022, the Board remanded the claims for VA to obtain new examinations. R. at 559-64.

During July 2022 VA examinations,[4] the examiner noted that the veteran's back and ankle flares occur frequently and were alleviated by medications, R. at 108, 120, and opined that they significantly limit functional ability, R. at 112, 124. In a September 2022 addendum, he noted that the back and ankle flares result in increased pain. R. at 57.

The Court notes that throughout the above proceedings, Mr. Ingram consistently reported using pain medication to control back and ankle symptoms. *See, e.g.,* R. at 1975 (VA medical note indicating that the veteran took acetaminophen), 2081-82 (VA emergency department note

---

[4] The parties refer to the June 2022 VA examinations as dated July 2022, presumably based on the date the reports were signed. *See* R. at 106-32. For the sake of consistency, the Court will use the parties' characterization.

3

indicating that the veteran took Toradol[5] and received Decadron[6] injections), 2084 (VA emergency department note indicating that the veteran took Aleve), 2303 (VA primary care physician note discussing that the veteran took meloxicam[7]), 2338-39 (VA primary care note stating that the veteran took methocarbamol[8] and tramadol[9]). He also submitted various VA treatment records showing flexion at 25% for his back. *See, e.g.*, R. at 2184 (Mar. 2014 physical medicine rehab consult), 2131 (May 2014 physical therapy note), 2109 (June 2014 physical therapy note).

In the November 2022 decision on appeal, the Board granted a 20% evaluation for the back disability effective March 16, 2011–earlier than the previously assigned date of October 30, 2019. R. at 5; *see* R. at 1144. The Board denied a back disability evaluation greater than 20% and an ankle disability evaluation greater than 10%. R. at 5. Mr. Ingram timely appealed to the Court.

## II. PRELIMINARY MATTER

As a preliminary matter, the Secretary concedes that remand is warranted for the back disability because the Board failed to address favorable VA treatment records documenting flexion at 30 degrees or less, which may result in assignment of a higher back evaluation. *See* Appellant's Brief (Br.) at 15-16; Secretary's Br. at 7. In all cases before it, the Board must analyze the credibility and probative value of evidence, account for evidence it finds persuasive or unpersuasive, and provide reasons for rejecting material evidence favorable to the claimant. *Caluza v. Brown*, 7 Vet.App. 498, 506 (1995), *aff'd per curiam*, 78 F.3d 604 (Fed. Cir. 1996) (table). The Court agrees that failure to address favorable VA treatment records regarding the back condition is indisputable Board error. *See id.* The Court therefore accepts the Secretary's concession that remand is warranted in this regard and will require the Board to address the

---

[5] Toradol is a brand name for the drug Ketorolac, a nonsteroidal anti-inflammatory drug that treats moderate to severe pain. *See Ketorolac*, MEDLINE PLUS, U.S. NATIONAL LIBRARY OF MEDICINE, National Institutes of Health [hereinafter MEDLINE PLUS], https://medlineplus.gov/druginfo/meds/a614011.html (last visited Jan. 13, 2025).

[6] Decadron is a brand name for the drug Dexamethasone, a steroid that relieves inflammation. *See Dexamethasone*, MEDLINE PLUS, https://medlineplus.gov/druginfo/meds/a682792.html (last visited Jan. 13, 2025).

[7] Meloxicam is a nonsteroidal anti-inflammatory drug that treats pain or inflammation caused by osteoarthritis. *See Meloxicam*, MEDLINE PLUS, https://medlineplus.gov/druginfo/meds/a601242.html (last visited Jan. 13, 2025).

[8] Methocarbamol is a prescription generic drug used to relax muscles and relieve pain and discomfort caused by strains, sprains, and other muscle injuries. *See Methocarbamol*, MEDLINE PLUS, https://medlineplus.gov/druginfo/meds/a601242.html (last visited Jan. 13, 2025).

[9] Tramadol is an opioid used to relieve moderate to severe pain. *See Tramadol*, MEDLINE PLUS, https://medlineplus.gov/druginfo/meds/a695011.html (last visited Jan. 13, 2025).

4

unaddressed VA treatment records on remand when assessing the severity of the back disability. *See Tucker v. West*, 11 Vet.App. 369, 374 (1998) ("Generally, where the Board has incorrectly applied the law, failed to provide an adequate statement of reasons or bases for its determinations, or where the record is otherwise inadequate, a remand is the appropriate remedy.").

However, this conclusion does not resolve the parties' primary dispute regarding the meaning and application of *Jones* in the musculoskeletal disability context and whether, as to Mr. Ingram's service-connected musculoskeletal conditions, the Board was required to discount the beneficial effects of medication when the relevant rating criteria do not explicitly contemplate medication use.

### III. PARTIES' ARGUMENTS

Mr. Ingram argues that the Board erred in denying higher evaluations for his musculoskeletal disabilities because it failed to discount or subtract the beneficial effects of medication when evaluating both disabilities. Appellant's Br. at 14-24. He asserts that DCs 5237 and 5271 that apply to his back and ankle disabilities, respectively, do not address the effects of medication and therefore Board should have determined the beneficial effects of those medications and discounted them when evaluating his disabilities, pursuant to *Jones*, 26 Vet.App. at 63, and *McCarroll v. McDonald*, 28 Vet.App. 267 (2016). Appellant's Br. at 18.

The Secretary makes two arguments in response. One is a general argument concerning how the Court should interpret its own caselaw and the other is specific to musculoskeletal disabilities as a category. First, he contends that *Jackson v. McDonough* prohibits the Board from considering the beneficial effects of medication when assessing the service-connected disability severity because "'VA may not rely on factors outside the rating criteria, including the use of medication, unless the rating criteria contemplate the use of medication.'" Secretary's Br. at 11 (quoting *Jackson*, 37 Vet.App. 87, 92 (2023)). Second, as to musculoskeletal disabilities specifically, he argues that *Jones* should not apply because 38 C.F.R. § 4.40 and *Sharp v. Shulkin*, 29 Vet.App. 26 (2017), *Mitchell v. Shinseki*, 25 Vet.App. 32 (2011), and *DeLuca v. Brown*, 8 Vet.App. 202 (1995), *already* require examiners to provide ROM estimates of impairment under the worst-case scenario of a flare-up and applying *Jones* "would serve no purpose." Secretary's Br. at 12.

5

In reply, Mr. Ingram asserts that the Secretary's interpretation of *Jackson* directly conflicts with our longstanding *Jones* and *McCarroll* precedent cases. Reply Br. at 2-7. He also, inter alia, counters the Secretary's assertion that applying *Jones* would be redundant because regulations and caselaw concerning musculoskeletal evaluation already address worst-case scenarios. Reply Br. at 8.

## IV. ANALYSIS

First, we address the Secretary's argument that the Court's precedent decision in *Jackson* impacts our prior precedent, the *Jones* and *McCarroll* decisions, altering how the Board should approach evaluating a service-connected disability where evidence demonstrates that a veteran takes medication for that condition. Today we make clear that *Jackson* has no negative or alterative impact on the holdings in *Jones* and *McCarroll*, which remain good law. *Jackson* did not impose any checks on or changes to the Court's caselaw concerning evaluation of disabilities that are treated with medication.

*Jones* dealt with the Board's evaluation of a veteran's irritable bowel syndrome (IBS) under DC 7319, which does not mention medication. The Court in *Jones* concluded that when relevant rating criteria *do not* explicitly contemplate a veteran using medication to allay symptoms of a service-connected disability, the Board, in assessing the severity of that disability for rating purposes, must discount the beneficial effects of medication used. 26 Vet.App. at 61. And, on the other hand, when the relevant rating criteria *do* contemplate medication use, the Board need not discount those beneficial effects in assigning an evaluation. *Id.* In applying this holding, the Court determined that the Board in *Jones* had erred because it evaluated Mr. Jones's IBS based on the improved level of functioning achieved at least partially through the use of medication, despite the complete lack of rating criteria instruction that it do so. The Board did not, as it should have, base its evaluation on his baseline level of functioning without the use of medication.

A few years later, the Court issued *McCarroll*, with facts that provided a counterpoint to *Jones. McCarroll* addressed the Board's evaluation of a veteran's hypertension under DC 7101, where the rating criteria *do* contemplate medication use. 28 Vet.App. at 276. The Court in *McCarroll* essentially reinforced the holding in *Jones*, concluding that the Board did not err when it considered the beneficial effects of medication because, as noted, those criteria contemplate medication being used. *Id.*

6

In 2023, the Court in *Jackson* examined a veteran's evaluation for service-connected diabetes under DC 7913. In its holding, the Court explained that "[i]f DC 7913 does not specifically contemplate the effects of medication . . . then the Board may not rely on improvements from medication to award a rating when evaluating diabetes. If, on the other hand, DC 7913 does contemplate the effects of medication, then *Jones* doesn't apply." *Id.* at 92. And the Court then concluded that, because there is explicit mention of insulin medication in DC 7913, the rating criteria contemplate the beneficial effects of medication, and the Board did not err in relying on improvements from medication when assigning an evaluation for diabetes. *Id.* at 93-95. Notably, in *Jackson*, the Court recognized that *McCarroll* was "built on the foundation of *Jones*" and it "*reaffirmed*" that VA may not evaluate a disability by relying on factors outside the rating criteria, such as the beneficial effects of medication when medication is not mentioned or contemplated by the rating criteria. *Id.* at 92 (emphasis added).

The Secretary offers a twisted interpretation of the above-quoted language in *Jackson*, concluding that applying *Jones* to Mr. Ingram's case would be legal error. Secretary's Br. at 11. He argues that when the rating criteria do not mention medication, assigning an evaluation that considers the veteran's non-medicated level of impairment would be outside the bounds of the rating criteria because the criteria don't mention medication. *See id.* at 8-9 (taking language from *Jackson* out of context). But this misreading is unavailing because the Court was clear in *Jones* that "the Board commit[s] legal error by considering the effects of medication on the appellant's [disability] when those effects were not explicitly contemplated by the rating criteria."[10] 26 Vet.App. at 61. And we *reaffirmed* that holding in *Jackson*, *see* 37 Vet.App. at 92; indeed, we could not have done otherwise given that *Jones* was a precedent panel decision. Furthermore, we note that the Secretary's argument does not make logical sense and would involve VA adjudicators rating in a manner directly opposed to the Secretary's purported position—taking a veteran's

---

[10] And the Court has already repeatedly rejected the Secretary's misinterpretation of *Jones*. *See, e.g.*, *Haiar v. McDonough*, No. 23-4451, 2024 WL 4298207 (Vet. App. Sept. 26, 2024); *Coyne v. McDonough*, No. 23-3434, 2024 WL 3612058 (Vet. App. Aug. 1, 2024); *Green v. McDonough*, No. 23-0333, 2024 WL 1341017 (Vet. App. Mar. 29, 2024); *McWilliams v. McDonough,* No. 22-2418, 2023 WL 7145937 (Vet. App. Oct. 31, 2023); *Webster v. McDonough*, No. 22-0322, 2023 WL 4285969 (Vet. App. June 30, 2023); *Molina v. McDonough*, No. 21-7345, 2023 WL 2734466 (Vet. App. Mar. 31, 2023); *Kinley v. McDonough*, No. 21-0211, 2022 WL 1799814 (Vet. App. June 2, 2022); *Keith v. McDonough*, No. 20-6516, 2022 WL 1746415 (Vet. App. May 31, 2022); *Randolph v. McDonough*, No. 20-6730, 2022 WL 1744388 (Vet. App. May 31, 2022); *Tomasi v. McDonough*, No. 20-7615, 2022 WL 593647 (Vet. App. Feb. 28, 2022).

medicated state into account when medication is not listed in a DC results in introducing an unlisted factor to that DC. *Jones* explicitly rejected such action as inimical to proper evaluation of service-connected disability. In addition, the Secretary's argument contradicts the Federal Circuit's interpretation of our holding in *McCarroll*. *See Spicer v. McDonough*, 61 F.4th 1360, 1366 (Fed. Cir. 2023) (citing *McCarroll* for the proposition that VA regularly evaluates how medical intervention affects or would have affected a veteran's disability).

Next, we address the Secretary's alternative argument, that, in his words, because special regulations apply when VA evaluates musculoskeletal conditions, such conditions are already evaluated in light of worst-case scenarios, that is, flare-ups, and *Jones* should not apply. Secretary's Br. at 12. The Secretary argues that musculoskeletal flare-ups are tantamount to a veteran's unmedicated state and that "§ 4.40 ensures [that joints are] rated on a worst-case scenario . . . in which the ameliorating effects of medication, if any, are not present." *Id.* Secretary's counsel at oral argument indicated that medications eliminate, not just alleviate, pain and that a veteran taking medication will not experience flare-ups. Oral Argument at 1:02-1:04. He asserts that § 4.40 implicitly discounts beneficial effects of medication and an interpretation otherwise would unlawfully require the Board to adjudicate a "hypothetical disability." *Id.* at 42:22-43:00.

Before analyzing the Secretary's argument though, the Court will provide a summary of the unique features of VA musculoskeletal evaluations, based on regulations and caselaw. An individual musculoskeletal evaluation is based on the rating criteria set forth in the relevant DC in § 4.71a, and many DCs under that regulation are based on degree of ROM limitation. But a veteran may be entitled to a higher evaluation than set forth in the DC where the musculoskeletal disability results in additional functional loss on use or during flares. *Chavis v. McDonough*, 34 Vet.App. 1, 10 (2021); *Sharp*, 29 Vet.App. at 31-33; *DeLuca*, 8 Vet.App. at 206. This means that "when evaluating joint disabilities and their manifestations, adjudicators must consider [38 C.F.R.] §§ 4.40 and 4.45 to fully understand the nature of a veteran's disability." *Chavis*, 34 Vet.App. at 10. Section 4.40 indicates that disability is the inability to perform normal working movements of the body with normal excursion, strength, speed, coordination, and endurance. Section 4.45 explains that reduced patterns of normal joint movement may include more or less than normal movement, weakened movement, excess fatigability, impaired ability to move smoothly and precisely, pain on movement, and other factors. In addition, "to be adequate, a VA examination of the joints must, wherever possible, include the results of the range of motion testing," *Correia v. McDonald*, 28

Vet.App. 158, 169–70 (2016)—i.e., "on both active and passive motion, in weight-bearing and nonweight-bearing and, if possible, with the range of the opposite undamaged joint," 38 C.F.R. § 4.59.

The general rating formula applicable to Mr. Ingram's back and ankle disabilities is based on an assessment of the limitation of motion caused by the disabilities and, the parties agree, do not reference medication. *See* 38 C.F.R. § 4.71a, DC 5237, 5271; Appellant's Br. at 18; Secretary's Br. at 7. Therefore, customarily, and pursuant to current caselaw such as *Jones* and *McCarroll*, the Board was obligated to discount the beneficial effects of the medications taken for each disability and evaluate the baseline severity of those disabilities. This makes sense because veterans taking medication for a disability might present as less disabled than they actually are.

But, as noted, the Secretary argues that the special musculoskeletal regulations, along with *Sharp*, 29 Vet.App. 26, *Mitchell*, 25 Vet.App. 32, and *DeLuca*, 8 Vet.App. 202, already account for worst-case scenarios and so discounting the benefits of any back and ankle disability medication taken by Mr. Ingram is unnecessary. Secretary's counsel at oral argument contended that the July 2022 VA examination took into consideration that medications were alleviating factors for Mr. Ingram. Oral Argument at 1:02-1:03. He argued on this basis that, because the examination complied with legal authority and mentioned alleviating factors, it provided a full disability picture for the Board for evaluation purposes and the Board was therefore not required to discount again the beneficial effects of medication. *Id.* The Secretary's argument is unavailing.

Although the examination mentioned generally that medications were alleviating factors, it did not provide information that the Board could employ to satisfy *Jones*. And in its assignment of evaluations, the Board did not consider, for example, whether Mr. Ingram was taking medication(s), whether his ROM improved with medication use, and, if so, to what extent. Nor did the Board address whether flare-up frequency lessened with medication and, if so, to what extent. The Board's silence on these issues constitutes error in failing to comply with the tenet set forth in *Jones. See Tucker,* 11 Vet.App. at 374; *see also Deloach v. Shinseki*, 704 F.3d 1370, 1380-81 (Fed. Cir. 2013) (holding that remand is generally warranted where the Board has not yet performed necessary fact-finding or explicitly weighed the evidence of record).

Furthermore, the Court notes that Mr. Ingram's medical records reflect that he suffered from flare-ups even while on medication for his back and ankle disabilities. During an October 2017 back examination, the veteran reported taking tramadol and Motrin and still had flares that

9

impacted his ability to bend, lift, sit, stand, and walk. R. at 1730. And during July 2022 back and ankle examinations, the veteran indicated that his back and ankle flares were severe and were alleviated, but not eliminated, by medications. R. at 108, 120. Additionally, aside from those examinations, various VA treatment records contain notations of Mr. Ingram taking medications and nevertheless experiencing serious back and ankle symptoms. *See supra* section I. But the Board failed to address these parts of the record.

And these records directly counter the Secretary's argument that the Board complied with VA regulations and Court caselaw in assessing Mr. Ingram's disability picture. *See* Oral Argument at 1:02-1:03. The Secretary overlooks that evidence tends to show that Mr. Ingram's medications, which range from opioids to over-the-counter drugs, while reducing symptoms and alleviating his back and ankle pain, *see* R. at 108, 120, 1730, do not eliminate his symptoms or obviate his flares. In fact, to "alleviate" pain does not mean to eliminate it; rather, alleviation means that pain is lessened. *See* NEW OXFORD AMERICAN DICTIONARY 42 (3d ed. 2010) (defining "alleviate" as "to make (suffering, deficiency, or a problem) less severe"). As noted, medical records throughout the appeal period appear to reflect that, despite consistently taking medications, Mr. Ingram suffered from back and ankle flares. Thus, the evidence at the very least suggests, although the Court does not so find, that Mr. Ingram's musculoskeletal disabilities may be evaluated as more severe if they are untreated by medication or, as relates to his appeal, if the beneficial effects of medication are discounted so that he is evaluated on his baseline without those beneficial effects.

With all of this in mind, the Court must reject the Secretary's alternative argument that *Jones* should not apply to the evaluation of musculoskeletal conditions. The Secretary's argument ignores that the Court's holding in *Jones* complements caselaw concerning the evaluation of musculoskeletal conditions because VA could not assess a veteran's worst-case scenario, including a flare up, if it was also factoring in the beneficial effects of medication. Thus, we hold that *Jones* applies in the evaluation of musculoskeletal disabilities where the relevant DC does not reference medication as a factor in evaluation.

Applying this holding to Mr. Ingram's case, although it is clear from the record that Mr. Ingram takes medication to alleviate his back and left ankle symptoms, and although the Board cited *Jones* in its decision, indicating that it was aware of caselaw requiring the discounting of beneficial effects of medication, the Board did not acknowledge, let alone discuss and discount,

10

the beneficial effects of medication used to treat the veteran's disabilities. *See* R. at 5-20. Therefore, because the Board did not comply with *Jones*, remand is required. *See Tucker*, 11 Vet.App. at 374.

On remand, Mr. Ingram may present additional arguments and evidence to the Board in accordance with *Kutscherousky v. West*, 12 Vet.App. 369, 372–73 (1999) (per curiam order). *See Kay v. Principi*, 16 Vet.App. 529, 534 (2002). The Court reminds the Board that "[a] remand is meant to entail a critical examination of the justification for [the Board] decision," *Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991), and must be performed in an expeditious manner in accordance with 38 U.S.C. § 7112.

## V. CONCLUSION

Upon consideration of the foregoing, the Court will SET ASIDE the portions of the November 29, 2022, Board decision denying a back disability evaluation above 20% and a left ankle disability above 10% and REMAND those matters for further development and readjudication consistent with this decision. The balance of the appeal is DISMISSED.

11